LINDEBERG et al. v. DOVERSPIKE et al.

(Second Division.  Nome.  February 23, 1904.)

No. 921.

1. INJUNCTION—EQUITY.

The power of courts to grant injunctions is among their extraordinary powers, and should be cautiously and sparingly exercised. It is only where an action at law will furnish no adequate relief that equity will, on account of the injury being irreparable at law, administer the remedy by injunction.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, §§ 15–17.]

2. NUISANCE—PRIVATE NUISANCE—INJUNCTION.

An injunction against a private nuisance will be generally granted only where there is a strong and mischievous case of pressing necessity, and not because of a trifling discomfort or inconvenience suffered by the complainant.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Nuisance, § 55.]

3. INJUNCTION—WATERS AND WATER COURSES—POLLUTION—INJURY ALREADY SUSTAINED.

Plaintiffs own and operate the Moonlight springs water supply for the town of Nome. Defendants, who own a mining claim in the same watershed above the springs, permitted water discolored by mining to enter the springs, but their sluicing occupied but a few days, and had fully ceased before the application for the injunction against its continuance. *Held* that, as the nuisance was not continuous, and had ceased prior to the application, the injunction ought not to issue. Application denied.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 12.]

At the trial of this suit the question raised by the pleadings and submitted to the court was: Are the plaintiffs under the

2 A.R.—12

evidence entitled to a permanent injunction restraining the defendants from polluting the waters of the Moonlight springs by running the surface waters used by them in sluicing upon their claim down the natural watershed at the base of Anvil mountain into Moonlight creek and Moonlight springs?

The facts bearing with greatest force upon the question as they were developed in the testimony are included in the following summary:

The mining claim operated by the defendants lies adjacent to the lands upon which the Moonlight springs and Moonlight creek are located, at a higher elevation than the springs, and forms part of the natural watershed down which the waters formed by rain and melting snow upon defendants' claim descend, first upon the Moonlight springs lands or claims, and, further down the slope, into the springs themselves. The waters of Moonlight springs were appropriated in the year 1900 by the grantors and predecessors in title of the plaintiffs, and they and the plaintiffs have, ever since the year 1900, furnished to the city of Nome and its inhabitants their main supply of pure spring water for domestic, culinary, and other purposes. The waters of the springs were collected in a large reservoir, and transmitted to the city through a large pipe line. The owner of the land upon which the springs are situated (Robert Lyng) consented to the appropriation and diversion of the waters of said springs as aforesaid, and by his deed of conveyance conveyed to the grantors and predecessors in title of said plaintiffs all the waters of Moonlight creek and Moonlight springs, together with the right to divert and appropriate the same, and to build on his lands (a placer mining claim) all necessary dams, and to maintain thereon their pipe line and all other works or structures necessary to divert and appropriate said waters for the use and purposes aforesaid. The reservoir or dam above mentioned is built on the ground thus conveyed.

The defendants, and their agents, servants, and employés, in

the month of May, 1903, prior to the 18th day of the month, having accumulated a winter dump of gold-bearing dirt upon their claim, and having collected some of the surface waters lying upon said claim, ran them into sluice boxes, and with them proceeded to wash the ground of the dump therewith. After being so used, it followed the slope of said defendants' land, down the slope of the Moonlight springs claim into said creek and springs. In the process of sluicing, the water became discolored and befouled, and some of it commingling with the other clear water of the springs, discolored the water from the springs passing through the pipes into the city, and possibly rendered it impure.

The claim upon which the sluicing was done is called the "Grant Placer Claim," and was located and segregated from the public domain on the 9th day of January, 1899. It is described in the location certificate as claim No. 1 bench on the western base of Anvil mountain, and as comprising 20 acres of placer mining ground. The date of the appropriation of the mining claim operated by the defendants is thus shown to have been prior to the inauguration of the rights of the plaintiffs to the waters of the springs, by appropriation and purchase, aforesaid. A further fact clearly shown by the evidence is that the surface waters from the Grant placer claim can, with an expenditure of $300 or less, be effectually turned and prevented from entering the reservoir of the plaintiffs at all times, by constructing wing ditches on each side of their receiving reservoir.

These are enough of the facts at this point for the purposes of this opinion.

Ira D. Orton, for plaintiffs.
Wm. H. Packwood, for defendants.

MOORE, District Judge. It is plain, under the law, that the plaintiffs have acquired the right to the use and enjoy-

ment of the waters running in their natural state to, and collecting in the reservoir about, said springs,. limited only by the capacity of their pipe line. While this is true, it is also the law that the prior location of the adjacent claim gave its owners in succession the right to the reasonable enjoyment of the surface waters falling and settling thereon for mining purposes. The theory of the plaintiffs is that the defendants exceeded the rights given them by the law in collecting the surface waters, and sending them down upon the plaintiffs' adjoining claim and into the springs, increased in volume and rendered impure the quality by the sluicing, and that the defendants thus committed a private nuisance; and the plaintiffs now seek the aid of an injunction to restrain the defendants from again or further befouling the waters of said springs. They claim, too, that the acts of defendants, which have resulted in a private nuisance to them, amount also to a public nuisance, because the public are the consumers of the water. Impliedly, at least, they claim that their rights in equity are enhanced by the associated injury done, and likely to be done, to the public by the defendants' acts. While the supply of pure water to the inhabitants of Nome is a matter in which they, in common with the people of Seward peninsula, are interested, the rights of the city and its inhabitants are not a proper subject for consideration in this case. Their rights must not be drawn into the case, as to do so would darken counsel, and confuse the real issues before the court.

Under my view of the case as the facts present themselves, it is not necessary either to define with precision all the relative rights of the parties to the suit as respects the manner in which the defendants may, regarding the rights of the plaintiffs, use the surface waters upon their claim.

The power of courts to grant injunctions is among their extraordinary powers, and "should be cautiously and sparingly exercised." Spelling on Injunctions, vol. 1, § 394.

The same author in the same section declares that:

"An injunction against a private nuisance will be generally granted only where there is a strong and mischievous case of pressing necessity, and not because of a trifling discomfort or inconvenience suffered by the complainant."

There is no evidence that the plaintiffs suffered any pecuniary loss by the discoloring or befouling of their water supply. There is evidence, however, that the defendants continued to sluice for but a few days, while the waters formed by the melting snows of spring lasted. It is also in evidence that the defendants have withdrawn from the claim, and are not working it, having quitted it some months ago. It is apparent that the discoloration of the waters of the springs was an injury more imaginary than real, and the injury threatened was not a continuing one.

It is only where an action at law will furnish no adequate relief that equity will, on account of the injury being irreparable at law, administer the remedy by injunction. In my opinion an action at law will furnish the plaintiffs adequate compensation in damages for any injury, if any, they have suffered by the acts of the defendants; and, inasmuch as the injury, if any, worthy of determination by the court, has been done, and does not promise to be a continuing one, at least at the hands of the defendants, the injunction prayed for should be refused.

And it is hereby ordered that a decree be drawn in accordance with the conclusions now reached.