**RUTH BOYD, Plaintiff**

**v.**

**BONIFACIO LATALLADI, Defendant**

Civil No. 1228-1969

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

February 17, 1971

DANIEL W. AMBROSE, Attorney, St. Thomas, V.I., *for the plaintiff*

ALPHONSO A. CHRISTIAN, Attorney, St. Thomas, V.I., *for the defendant*

HOFFMAN, *Judge*

## OPINION

THIS is an action for damages and for abatement of a private nuisance brought by the plaintiff, Ruth Boyd, against the defendant, Bonifacio Latalladi. Previously, in Government of the Virgin Islands v. Bonifacio Latalladi, Criminal No. 29, 1970, 7 V.I. 137, this Court found Mr. Latalladi not guilty of the criminal charge of maintaining a public nuisance. Counsel for both sides have in a writing signed August 11, 1970, stipulated that this Court, for the purposes of the instant case, take into consideration the testimony adduced at the trial of the criminal action.

Subsequent to this Court's opinion in the criminal matter, plaintiff in this civil action filed a motion under 4 V.I.C. § 284 Disqualification of Judge. This motion was denied and the trial of this case proceeded.

Primarily for the purpose of determining what changes if any had occurred in the status of this matter since the criminal case was heard on March 17, 1970, this Court heard additional and rather extensive testimony from the plaintiff, the defendant and their witnesses on January 11, 1971. At the request of Alphonso Christian, Esq., attorney for the defendant, the Court allowed additional time for briefs to be filed. This has been done and the case is ready for decision. After a careful consideration of the record before it and being fully advised in the premises the Court now makes the following:

### FINDINGS OF FACT

1. Ruth Boyd, the plaintiff, lives at No. 120 Mahogany Estates. Her property is directly across the street from and faces the property of the defendant, Bonifacio Latalladi, who resides at No. 170 Altona.

2. Both properties are zoned as residential areas.

3. The defendant has been and continues to engage in the activity of collecting on his property assorted junk such as batteries, copper and bronze scrap metal, and wire. After accumulating a sufficient amount, he has it loaded and shipped to Puerto Rico. In carrying on this activity the defendant continuously, sometimes as often as two or three times a week, engages trucks which come to his house to load and unload this scrap. These trucks remain for as long as two hours and not only create problems for the plaintiff in going to and coming from her house, but they also create a great deal of noise which is very disturbing to the plaintiff and to people in her home. The defendant has also on occasion engaged a large trailer van for loading purposes, the last time being on September 10, 1970 when said van remained on the street for a period of three days. In addition to the noise and inconvenience these activities cause the plaintiff, the storage of this junk in and around the defendant's open garage is very unsightly.

4. The defendant keeps at least 19 fighting cock roosters on his property. Although they are no longer kept tied to the plaintiff's wall, the loud, cacophonous noises they make in close proximity to the plaintiff's property are very unpleasant and cause the plaintiff to lose a great many hours of sleep.

5. The plaintiff, in addition to showing damages to her physical comfort by virtue of the defendant's aforesaid activities, attempted to prove that the value of her property has declined as a result of the same. However, no expert testimony was offered along these lines.

6. At the present time tenants living in the defendant's three story structure have ceased making an unreasonable amount of noise.[1]

---

[1] Even during the time that the defendant's tenants had been staying up late playing records and making excessive noise (Finding No. 4 of Criminal Case), it was not shown that Mr. Latalladi had consented to such activity

176

## DISCUSSION

 A private nuisance is an unreasonable interference with another's use and enjoyment of land.[2] It is generally non-trespassory in nature. The mere fact that an interference in the use and enjoyment of another's land is found to exist does not mean that an action for private nuisance will lie.

 In determining whether an interference is sufficient to amount to a private nuisance, the question which must be answered is "whether reasonable persons generally, looking at the whole situation impartially and objectively would consider it unreasonable."[3] A number of factors are to be considered in making such a determination, including the gravity of the harm and the utility of the conduct.[4]

██ ██ After considering the relative interests of the parties to this action, the Court concludes that a private nuisance does, in fact, exist by virtue of the activities existing at the defendant's premises as enumerated by Findings of Fact Nos. 3 and 4; each finding constituting a nuisance independently of the other.

In reaching these conclusions this Court finds the Restatement of Torts § 831 particularly appropriate. This section states:

---

on the part of his lessees. Indeed, the defendant introduced into evidence a sign which he had put up on the premises cautioning his tenants about the use of excessive noise.

Therefore, even for this period of time when his tenants did make excessive noise, no requisite showing was made by the plaintiff (see Restatement of Torts § 837 which discusses the liability of a lessor for activities on land leased) to hold the defendant liable for such noise.

The question of whether Mr. Latalladi should, under the V.I. Zoning Laws, even be entitled to operate this rooming or apartment house at all, is (as indicated on page 8 of the opinion in the criminal case) a determination which is best made by the Commissioner of Public Works or the Planning Board in the first instance.

[2] See Restatement of Torts § 822.
[3] See Restatement of Torts § 826 Comment b.
[4] See Restatement of Torts §§ 827, 828.

§ 831. *Gravity v. Utility—Conduct Unsuited to Locality*

Under the rules stated in §§ 826–828 an intentional invasion of another's interest in the use and enjoyment of land is unreasonable and the actor is liable when

(a) the harm is substantial; and

(b) the particular use or enjoyment interfered with is well suited to the character of the locality; and

(c) the actor's conduct is unsuited to the character of that locality.

In each instance enumerated in Finding No. 3 or No. 4 (the defendant's activities in the collection of junk or his maintenance of roosters) there is an "intentional" invasion as that term is defined in the Restatement of Torts § 825(b).[5] In addition, the harm suffered by the plaintiff is in each instance substantial[6] and not merely slight or petty as the defendant contended at trial. The law of nuisance recognizes the importance of personal comfort, pleasure and enjoyment which a person normally derives from his land and will protect this interest from just such unreasonable and disturbing activities as the defendant is here engaged in.

The collecting of junk as described in Finding No. 3 is certainly out of character in a residential area. In his brief the defendant has contended that aesthetic conditions alone will not justify a court's interference. Because of the factual situation presented in this case, however, the Court finds it unnecessary to decide this issue since much more is involved here than purely aesthetic considerations. In addition to unsightliness the plaintiff has for a long period of time been subjected to loud trucks, disturbing loading and unloading operations, and extremely limited access to and from her own house. Oftentimes the plaintiff has been

---

[5] Restatement of Torts § 825 Intentional Invasion—What Constitutes
 An invasion of another's interest in the use and enjoyment of land is intentional when the actor . . .
 (b) knows that it is resulting or is substantially certain to result from his conduct.

[6] See Restatement of Torts § 822 Comment g.

completely unable to take her car into her driveway or to remove it from same.

■ Because of the circumstances that the defendant has maintained this junk business for several years and that plaintiff is presently no longer living personally in the premises involved (No. 120 Mahogany Estates) and that several of the witnesses living in the area apparently do not mind this operation, the Court does not feel justified at this time in ordering a complete removal of the aforementioned junk including scrap metal, batteries, wire, etc., from the defendant's premises and ordering the complete cessation of same but would, instead, leave this for future consideration after the propriety of operating such business in a residential area has been administratively determined.

With respect to Finding No. 4, although there may be possible social value in raising roosters, the Court nevertheless feels that the interest in protecting the future tenants or owners of the premises from the resulting loud and unpleasant noises from such roosters, particularly in the early morning hours; and also the interest to the community in maintaining the neighborhood as a peaceful residential area outweighs the defendant's interest in raising roosters in this particular place. What might not be a nuisance in one place may become a nuisance in another. A private nuisance here exists by virtue of the maintenance of these roosters, for which abatement under 28 V.I.C. § 331 will lie.

### CONCLUSIONS OF LAW

1) A private nuisance adversely affecting the plaintiff is being maintained by the defendant by virtue of each of the following:

 a) The defendant's activities in connection with his collection and disposal of junk;

 b) The defendant's maintenance of 19 roosters.

2) The plaintiff is entitled to recover damages for her personal physical discomfort, inconvenience and annoyance by virtue of the defendant's aforesaid activities in the amount of $500.00.

3) The plaintiff has failed to prove by competent expert testimony the amount of depreciation or loss of value if any to which her property has been subjected as a result of the defendant's activities.

4) The plaintiff is entitled to an order for the abatement of the defendant's maintenance of his 19 roosters.

Judgment shall be entered in favor of the plaintiff in the amount of $500.00 plus Court costs of $4.00 and attorney's fees of $300.00.

In addition, an order shall be entered allowing a warrant to issue to the Marshal at any time subsequent to March 19, 1971 to abate the above nuisance. Such warrant shall direct the Marshal to remove at the expense of the defendant, any roosters he finds on the premises of No. 170 Altona. The defendant shall be given a period of 30 days from date to remove all of these roosters during which period said warrant shall not issue.

At any time subsequent to March 19, 1971, but before May 19, 1971, upon the request of the plaintiff to the Clerk of the Municipal Court Part II, such warrant described above shall issue.

Judgment to be stayed a period of 30 days from date.