**JUAN BERMUDEZ, Plaintiff**

**v.**

**VIRGIN ISLANDS TELEPHONE CORPORATION d/b/a INNOVATIVE TELEPHONE CORPORATION, Defendant**

Case No. SX-10-CV-298

Superior Court of the Virgin Islands

Division of St. Croix

January 20, 2011

174

176

KYE WALKER, ESQ., Law Offices of K.G. Cameron, Christiansted, St. Croix, USVI, *For the Plaintiff.*

KEVIN A. RAMES, ESQ., Law Office of K.A. Rames, P.C., Christiansted, St. Croix, USVI, *For the Defendant.*

DONOHUE, SR., *Presiding Judge*

## Memorandum Opinion

(January 20, 2011)

**BEFORE THE COURT** is Defendant Virgin Islands Telephone Corporation's Motion to Dismiss Plaintiff Juan Bermudez's private nuisance claim for failure to state a claim upon which relief may be granted. (*See generally* Def. Mot. Dismiss, filed Aug. 24, 2010.) Plaintiff filed his brief in opposition. (*See generally* Pl. Opp'n, filed Sept. 2, 2010.[1]) Defendant submitted its reply thereto. (Def. Reply to Pl. Opp'n, filed Sept. 7, 2010.[2]) This matter is therefore properly before the Court. For the reasons that follow, Defendant's Motion to Dismiss is denied.

## I. BACKGROUND

Plaintiff commenced this action against Defendant for private nuisance and negligent infliction of emotional distress. (*See generally* Compl., filed

---

[1] Plaintiff had until Tuesday, August 31, 2010 to file his brief in opposition. On September 1, 2010, Plaintiff moved for an extension of two days to file his opposition because of power outages and other complications due to Hurricane Earl brushing the U.S. Virgin Islands over August 30-31, 2010. (Pl. Amend. Mot., filed Sept. 1, 2010.) Plaintiff filed his reply brief on Thursday, September 2, 2010. Given the circumstances, Plaintiff's motion will be granted under separate order of even date.

[2] Defendant had until Friday, September 3, 2010 to file its reply to Plaintiff's opposition. The Court notes, however, that Defendant needed an opposition to reply to; Plaintiff did not file his opposition until Thursday, September 2, 2010. *See* fn 1, *supra.* Thus, one day is hardly adequately time to prepare a response. Moreover, Monday, September 6, 2010 was Labor Day and the Court was closed. Defendant filed its reply the next business day. (Def. Resp. to Pl. Opp'n, filed Sept. 7, 2010.) Defendant did not, however, move for an extension of time, but given the circumstances, under separate order of even date the Court will deem Defendant's reply timely filed.

June 30, 2010.) He seeks a temporary restraining order, preliminary injunction, permanent injunction, and damages. On August 17, 2010, the Parties appeared before the Court to discuss scheduling the hearing on Plaintiff's motion for preliminary injunction.[3] (Order, entered Aug. 17, 2010.) The Court scheduled the hearing on the preliminary injunction for September 9, 2010, and issued a briefing schedule. *Id.* In lieu of briefing Plaintiff's Motion for Preliminary Injunction however, Defendant instead moved to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.[4] At the hearing on the preliminary injunction, the Court allowed the Parties time to argue Defendant's motion to dismiss, but reserved ruling to proceed with the preliminary injunction hearing.

## II. STANDARD ON MOTION TO DISMISS

■ A complaint must contain: "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2) (applicable via SUPER. CT. R. 7). Courts undertake a two-step analysis when evaluating the sufficiency of the complaint's statements of the claim or claims upon which relief may be granted. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-211 (3d Cir. 2009) (noting recent changes to pleading

---

[3] Initially this matter was assigned to the Honorable Harold W.L. Willocks. On July 7, 2010, the Court denied Plaintiff's request for a temporary restraining order and scheduled a hearing on the preliminary injunction. (Order, dated July 7, 2010 and entered July 12, 2010.) The hearing was scheduled for Friday, July 9, 2010. (Order, dated July 7, 2010 and entered July 12, 2010.) Defendant subsequently moved for, and the Court granted, a continuance of three days. (Order, dated July 8, 2010 and entered July 12, 2010.) On July 12th, the Court heard approximately six hours of testimony but adjourned before the Parties concluded. (*See* Pl. Mot. for Date Certain, filed July 16, 2010; R. of Proceeding, filed July 12, 2010.) Subsequently, Judge Willocks learned that "Plaintiff is the father of a good friend" and accordingly recused himself from hearing this matter further. (Order, entered July 20, 2010.)

[4] Plaintiff asserted two claims against Defendant: private nuisance (Count I) and negligent infliction of emotional distress (Count II). (Compl. ¶¶ 45-51.) In briefs and oral argument, the Parties addressed only Count I despite Defendant having "move[d] this honorable Court for dismissal of the Plaintiff's *Complaint*." (Def. Mot. to Dismiss 1 (emphasis added)). Defendant did acknowledge both counts. *See id.* at 2. But other than a general request to dismiss the Complaint in its entirety, Defendant has neither presented nor argued any grounds for dismissing Count II. In fact, in challenging the viability of Count I, Defendant conceded that Count II could be a viable basis for relief. *See id.* at 8 (noting section of the Noise Pollution Control Act authorizing civil actions and referencing negligent infliction of emotion distress as an example). Accordingly, the Court construes Defendant's motion to challenge only Count I.

standards and requiring two-part test for lower courts when reviewing the sufficiency of a complaint).

First, the court must accept as true all of the complaint's "well-pleaded facts." *Id.* Legal conclusions, however, may be disregarded. *Id.* at 210-11. Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim to relief.' " *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its experience and common sense.' " *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). Now to survive a motion to dismiss, the complaint must both *allege* and *show* " 'that the pleader is entitled to relief.' " *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). The previous "no set of facts" basis for surviving a motion to dismiss has been "retired." *Iqbal*, 129 S. Ct. at 1944 (referring to *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Unlike many challenges to a complaint's sufficiency, here the facts as pled by Plaintiff are not the gravamen of this motion to dismiss. Rather, Defendant challenges the legal authority relied upon by Plaintiff for the relief sought. As the facts are not in dispute, the Court recites them here briefly in accordance with the requisite analysis.

### a. Factual Summary

Plaintiff owns and resides at Plot No. 7-H Estate St. John, St. Croix, U.S. Virgin Islands. (Compl. ¶ 6; Def. Mot. Dismiss 1.) He has lived there for ten years. (Compl. ¶ 9.) At the time Plaintiff purchased his property, Defendant operated a remote switch located in front of Plot 7-G, a property abutting Plaintiff's property. (Compl. ¶ 15; Def. Mot. Dismiss 1.) That switch produced a sound that was audible outside, but not inside, Plaintiffs home or porch area. (Compl. ¶¶ 17-18; Def. Mot. Dismiss 1.)

In March 2010, Defendant began work on installing a new and larger remote switch located closer to Plaintiff's property than where the prior switch was located. (Compl. ¶¶ 19-21, 32; Def. Mot. Dismiss 1.) Removal of the old switch and installation of the new switch disturbed Plaintiff greatly in the use and enjoyment of his property. (Compl. ¶¶ 19-28; Def. Mot. Dismiss 1-2.) In May 2010, when the new switch became operational, Plaintiff noticed that it produced a humming sound audible outside his home but now inside as well. (Compl. ¶¶ 35-37, 42; Def. Mot. Dismiss 2.) The humming sound emitted by the new switch disturbs

Plaintiff and has detrimentally affected his sleep and health. (Compl. ¶¶ 36-44; Def. Mot. Dismiss 2.) As a result, Plaintiff claims that the sounds emanating from Defendant's remote switch constitutes an invasion of his property and therefore a nuisance interfering with his use and enjoyment of his property. (Compl. ¶ 46-47; Def. Mot. Dismiss 2.)

## III. DISCUSSION

Plaintiff alleged a noise-based private nuisance claim in this matter. Defendant argues that Plaintiff's private nuisance claim must be dismissed, however, because civil actions for noise-based disturbances are based exclusively on the Noise Pollution Control Act ("NPCA"). (Def. Mot. Dismiss 3-4.) Prior to the enactment of the NPCA, Defendant argues, "there was no local statutory basis for the maintenance of a civil cause of action for the remediation of a private nuisance . . . [because] the Legislature of the Virgin Islands had passed no law providing for a legal or regulatory structure . . . . " *Id.* at 4. Subsequently, the Legislature "occupied the field on the narrow issue of noise pollution as a private nuisance and has [now] imposed definitions, prohibitions, standards and exemptions that more clearly define and limit this cause of action." *Id.* at 11-12.

Under the NPCA, noise is defined as "the intensity, frequency, duration and character of sounds from a source or number of sources which annoys or disturbs humans or causes or tends to cause an adverse psychological or physiological effect on humans." V.I. CODE ANN. tit. 19, § 2041(g) (Supp. 2010). For noise to rise to the level of a disturbance under the NPCA, the disturbance must be

(1)   harmful or injurious to the health, safety or welfare of any individual;

(2)   unreasonably interferes with the enjoyment of life, quiet, comfort or outdoor recreation of an individual of ordinary sensitivity and habits;

(3)   endangers or injures the conduct of business;

(4)   jeopardizes the value of property and erodes the integrity of the environment; *and*

(5)   exceeds a sound level of 75 dBA.

*Id.* § 2041(h)(1)-(5) (emphasis added). By the plain language of the statute, five factors are necessary before a noise becomes a "disturbance."

The NPCA goes much further than defining noise, however. For example, the NPCA also defines terms not inherently related to noise *per se* or even noise disturbances, terms such as watercraft, construction activity, and emergency. *See id.* § 2041(r), (b), & (d). In addition, the NPCA imposes a requirement upon all taverns and bars within 500 feet of a church, school, or residential area that they be soundproofed or face penalties for noncompliance. *Id.* § 2043. Actions such as selling anything within 500 feet of a residence using a sound production device, for example, or operating power-driven machinery like lawn mowers or shears in a residential area between the hours of 11:00 p.m. and 7:00 a.m. are declared misdemeanors. *Id.* §§ 2042(b), 2042(g). The Virgin Islands Police Department is authorized to investigate possible violations of the NPCA. *Id.* § 2044(a). Violations could result in a penalty of up to 180 days in prison. *Id.* § 2044(d).

In addition to criminal penalties, the NPCA also authorizes civil actions for damages caused by noise disturbances. *Id.* § 2045. Sounds emanating from certain sources, however, like aircrafts and airports or emergency vehicles, are exempt from both criminal and civil liability. *Id.* § 2046(a). Additionally, sounds emanating from the "operation of a regulated utility" are exempt under the NPCA. *Id.* § 2046(a)(5). Accordingly, Defendant argues, since "the business activities of Defendant are expressly exempt from the Noise Pollution statute," (Def. Mot. Dismiss 10), Plaintiff's noise-based private nuisance claim must be dismissed because what Plaintiff complains of is now "outside the reach of the Noise Pollution statute," *id.* at 11.

In opposition, Plaintiff argues that Defendant is mistaken in claiming that the NPCA applies here. As Plaintiff points out, for Defendant to be correct, the Court would have to find that the NPCA explicitly or implicitly superseded noise-based private nuisance actions.[5] (Pl. Opp'n.

---

[5] The Parties have debated in briefs and oral argument whether the Legislature of the Virgin Islands preempted application of the RESTATEMENTS (SECOND) OF TORTS in enacting the NPCA. Preemption, however, refers to "[t]he principle (derived from the Supremacy Clause) that a federal law can supersede or supplant any inconsistent state law or regulation." BLACK'S LAW DICTIONARY 1297 (9th ed. 2009). Thus, preemption, technically speaking, is inapplicable here when considering whether the Legislature of the Virgin Islands foreclosed application of a statute passed by the same legislative body. Instead, supersession refers to situations where the same legislative body "annuls[s], make[s] void, or repeal[s]" a previous statute through the enactment of a later one. *Id.* at 1576. Thus, the Court assumed for purposes

1.) "[A] presumption exists that a legislature was fully cognizant of prior and existing law within the subject matter of its enactment. [Therefore], a statute that may be in abrogation of the common law must be strictly construed in keeping in mind that the legislature does not intend 'untoward results.' " *Id.* at 17 (citation omitted). Furthermore, Plaintiff argues, the overall context of the statute and its legislative history "contain[] no language articulating an intent to usurp the entire field of nuisance law or otherwise provide a remedy for the invasion of a private citizen's use and enjoyment of property." *Id.* at 16. Rather common law causes of action, like noise-based private nuisance claims brought pursuant to the Restatement (Second) of Torts, are explicitly permitted by the NPCA. *Id; see* V.I. CODE ANN. tit. 19, § 2045 (Supp. 2010) ("Any person who suffers actual damage as a result of a violation of this chapter . . . may bring an action . . . under this chapter and may bring any other common law or statutory causes of action."). Accordingly, Defendant's motion to dismiss should be denied.

In reply, Defendant asserts that

> [t]he NPCA is not required to contain language that either expressly or implicitly preempts the Restatement[s], this is accomplished by Title 1 V.I.C. § 4, which provides that the Restatements of the Law constitutes the common law of the Virgin Islands *in the absence of statutes or case law to the contrary.* As the NPCA is a statute to the contrary, nothing more need be said or done.

(Def. Reply to Pl. Opp'n 2 (emphasis in original).)

Defendant is correct that the Restatement (Second) of Torts does not supply the statutory authority for Plaintiff's private nuisance claim. In fact, the Restatement (Second) of Torts never provided the basis for private nuisance actions in the U.S. Virgin Islands. Instead for nearly ninety years a statute has provided that authority, something neither party noticed. *See* V.I. CODE ANN. tit. 28, § 331 (1996). The Court acknowledges, however, that in some instances a later-enacted statute may operate to alter or even repeal an earlier statute. But the Court need

---

of this motion that the Parties intended to discuss whether the Legislature superseded application of the Restatement (Second) of Torts in the area of private nuisance based on noise when it enacted the NPCA.

not extensively analyze whether the NPCA superseded noise-based actions under the private nuisance statute because supersession is not apparent here.

██ Generally one statute supersedes another in one of two ways: expressly or impliedly. To expressly supersede a statute, language must state clearly that a prior statute is thereby repealed or annulled. Here the Legislature did repeal two prior statutes when enacting the NPCA, but the private nuisance statute was not among those. Instead, the Legislature expressly repealed Section 52 and Section 357 of Title 23 of the Virgin Islands Code, statutes prohibiting, respectively, loud announcement of articles for sale and playing of music in public after 10 p.m. *See* Act of June 20, 2007, No. 6930, §§ 3-4, 2007 V.I. Sess. L. 64. Three years after enactment, the Legislature amended the NPCA. *See generally* Act of Mar. 9, 2010, No. 7163, 2010 V.I. Sess. L. ___. Nothing in the legislation enacting or amending the NPCA expressly repealed the private nuisance statute, either in part or in whole, and the Court cannot conclude otherwise.

██ Similarly, the Court does not find evidence in the NPCA that reflects the Legislature impliedly superseded the private nuisance statute. Repeals by implication are strongly disfavored. *Porter v. U.S. Dept. of Justice*, 717 F.2d 787, 797 (3d Cir. 1983). For one statute to impliedly repeal another, or portions of another, legislative intent must be clear and apparent. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662, 127 S. Ct. 2518, 168 L. Ed. 2d 467 (2007) (quoting *Watt v. Alaska*, 451 U.S. 259, 267, 101 S. Ct. 1673, 68 L. Ed. 2d 80 (1981)). Here neither the scope of the NPCA nor its definition of noise reflects intent to substitute the NPCA for the tort of private nuisance, an action involving the "invasion of another's interest in the private use and enjoyment of land." RESTATEMENTS (SECOND) OF TORTS § 821D (1977).[6] Unlike the private nuisance statute, the Legislature did not limit application of the NPCA to landowners. In fact, nothing in the statute speaks to the class of persons the statute seeks to protect. Instead, "any person" may bring an action under the NPCA. V.I. CODE ANN. tit. 19, § 2045 (Supp. 2010). Only two requirements were imposed: that the noise complained of "*endangers or injures the conduct of business,*" *id.* § 2041(h)(3)

---

[6] The Restatement (Second) of Torts is quoted here only for its capacity to restate the common law in general.

(emphasis added), and that the complainant suffers "actual economic damages," *id.* § 2045. While the NPCA may be akin to a public nuisance statute regarding noise,[7] its similarity to the private nuisance statute ends there. Nothing within the legislative history of the NPCA reflects intent to address noise-based disturbances purely private in scope. The harm targeted by the NPCA is completely different than that targeted by the private nuisance statute. Moreover, the NPCA goes further than the private nuisance statute to criminalize certain types of noise. Thus, the Court cannot conclude that the NPCA impliedly superseded the private nuisance statute. "[I]mplied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter [a]ct covers the whole subject of the earlier one *and is clearly intended as a substitute.*" *Nat'l Ass'n of Home Builders*, 551 U.S. at 663 (citation omitted) (emphasis added). Here one statute imposes civil and criminal liability for noise affecting businesses, something separate and distinct from a statute authorizing civil actions for interference with use and enjoyment of real property. Noise is but one form of nuisance and an absurd outcome would result were the Court to conclude that the Legislature intended that noise-based nuisances be litigated under the NPCA while odor- or light-based nuisances, for example, continue under the private nuisance statute.

The Court now turns to the private nuisance statute itself: Section 331 of Title 28 of the Virgin Islands Code. While neither party referenced this statute in their filings, the Court finds that the private nuisance statute is at the heart of the dispute here. The Court is also cognizant that prior Virgin Islands cases employed only the Restatement of Torts, perhaps because, as Defendant believed, "there was no local statutory basis for the maintenance of a civil cause of action for the remediation of a private nuisance . . . . " (Def. Mot. Dismiss 4.) *See, e.g., Henry v. St. Croix Alumina, LLC*, No. 1999-CV-0036, 2009 U.S. Dist. LEXIS 80830, *21 (D.V.I. Aug. 28, 2009) ("Count IV states a claim for private nuisance, which is 'a nontrespassory invasion of another's interest in the private use

---

[7] *See, e.g.*, Pl. Br. Opp'n to Def. Mot. Dismiss, Ex. 9 (Letter from Gov. John P. de Jongh, Jr. to Sen. Usie R. Richards (July 6, 2007) ("I have signed into law this day Bill No. 27-0026 entitled 'The Noise Pollution Control Act.'. . . my approval of this Bill is accompanied by my grave reservations regarding its impact on both *commercial and non-commercial speech* protected by the First Amendment to the United States Constitution.") (emphasis added)). In general, the First Amendment covers speech occurring in public or semi-public spaces.

and enjoyment of land.' ") (quoting RESTATEMENTS (SECOND) OF TORTS § 821D (1979)); *Mahogany Run Condo. Ass'n, Inc. v. ICG Realty Mgmt. Corp.*, 40 V.I. 404, 407 (D.V.I. 1999) (quoting RESTATEMENT (SECOND) OF TORTS § 821D (1979)); *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 991, 995 (D.V.I. 1995) (citing Restatement as basis of private nuisance claim); *Hodge v. Bluebeard's Castle*, 44 V.I. 242, 252 (Terr. Ct. 2002) (same); *Boyd v. Latalladi*, 8 V.I. 173, 177 (Mun. Ct. 1971) (same). To date, only one reported case applied the private nuisance statute and even then that court turned to the Restatement for guidance. *Boyd*, 8 V.I. at 177 (citing V.I. CODE ANN. tit. 28, § 331 (1976) and RESTATEMENT (FIRST) OF TORTS §§ 822-828 (1939)). Thus, the Court must now analyze this statute to determine its applicability.

"The 'first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " *Smith v. Magras*, 124 F.3d 457, 462, 37 V.I. 464 (3d Cir. 1997) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)). If the language of the statute is clear, the court's inquiry stops there. *Id.* Only when the language of the statute is unclear will courts look beyond the statute for assistance in ascertaining its meaning.

■ The Virgin Islands private nuisance statute states:

> Any person whose property is affected by a private nuisance, or whose personal enjoyment thereof is in like manner thereby affected, may maintain an action for damages therefor. If judgment is given for the plaintiff in such action, he may, in addition to the execution to enforce the same, on motion, have an order allowing a warrant to issue to the marshal to abate such nuisance. Such motion shall be made at the term at which judgment is given, and shall be allowed of course, unless it appears on the hearing that the nuisance has ceased, or that such remedy is inadequate to abate or prevent the continuance of the nuisance in which latter case the plaintiff may proceed to have the defendant enjoined.

V.I. CODE ANN. tit. 28, § 331 (1996). Here the plain language of Section 331 is unambiguous: private nuisances are actionable by statute. One's property, or enjoyment of property, must be affected. Both damages and injunctive relief are available. What constitutes a nuisance, however, is ambiguous as

185

the statute leaves the operative term "private nuisance" undefined. Thus, the Court must look beyond the statute for further guidance.

The current private nuisance statute dates back to the enactment in 1957 of a comprehensive code for the U.S. Virgin Islands. Before then, private nuisance causes of action were codified in the Municipal Code of St. Thomas and St. John, and its counterpart the Municipal Code of St. Croix ("1921 Codes"). *See* V.I. CODE ANN. tit. 28, § 331 (1996) (noting historical source). The earlier private nuisance statute provided:

> Any person whose property is affected by a private nuisance, or whose personal enjoyment thereof is in like manner thereby affected, may maintain an action for damages therefor. If judgment be given for the plaintiff in such action, he may, in addition to the execution to enforce the same on motion, have an order allowing the warrant to issue to the sheriff to abate such nuisance. Such motion must be made at the term at which judgment is given, and shall be allowed of course, unless it appear on the hearing that the nuisance has ceased, or that such remedy is inadequate to abate or prevent the continuance of the nuisance in which latter case the plaintiff may proceed to have the defendant enjoined.

Mun. Code of St. Croix, tit. III, ch. 32, § 1 (1921) (abrogated 1957) (*microformed on Codes, Ordinance, Laws, and Resolutions of the Virgin Islands: 1917-1954*, call no. LL-0301 (Library of Congress)). A textual comparison of the earlier statute with the current statute shows that the earlier statute was retained almost without change after the creation, adoption, and enactment of the current Virgin Islands Code.[8] Further support for that conclusion is found in the preface to the first edition of the Virgin Islands Code where it explains that "[a]ll available laws, including the 1921 Codes . . . were classified according to subject matter, carefully edited, and arranged into 34 titles." V.I. Code Ann. at xi (reprinting first edition preface) (1995). As very little in the earlier statute was edited before its importation from the 1921 Codes into the 1957 Code, the Court must examine the history of the 1921 Codes for further illumination.

---

[8] There are five differences between Section 1 and Section 331. For example, Section 1 uses sheriff whereas in Section 331 the term was changed to marshal. The second sentence in Section 1 starts "[i]f judgment be" whereas in Section 331 it reads "[i]f judgment is." The third sentence in Section 1 starts "[s]uch motion must" whereas in Section 331 it reads "[s]uch motion shall," and so forth.

186

■ In general, the 1921 Codes "were taken largely from the codes of the Territory of Alaska." *Burch v. Burch*, 195 F.2d 799, 805, 2 V.I. 559 (3d Cir. 1952).[9] Support for concluding that the private nuisance statute was among those taken from Territorial Alaska is found within the text of the private nuisance statute enacted in 1900 by Congress for that territory:

> Any person whose property is affected by a private nuisance, or whose personal enjoyment thereof is in like manner thereby affected, may maintain an action for damages therefor. If judgment be given for the plaintiff in such action, he may, in addition to the execution to enforce the same, on motion, have an order allowing a warrant to issue to the marshal to abate such nuisance. Such motion must be made at the term at which judgment is given, and shall be allowed of course, unless it appear on the hearing that the nuisance has ceased, or that such remedy is inadequate to abate or prevent the continuance of the nuisance, in which latter case the plaintiff may proceed to have the defendant enjoined.

An act making further provision for a civil government for Alaska, and for other purposes, Ch. 786, 31 Stat. 321, 385 (1900).[10] *See also Snyder v.*

---

[9] The 1921 Codes had been "developed by two young lawyers, Leslie Curry and Denzil Noll, both of whom had come to the U.S. Virgin Islands from the Territory of Alaska soon after 1917. Taking as their lodestar the Alaska Code which, in turn, was derived from the Oregon Code, these two young lawyers compiled two separate codes — one for each municipality." John D. Merwin, *The U.S. Virgin Islands Come of Age: A Saga of Progress in the Law*, 47 A.B.A. J. 778, 779 (1961).

[10] Initially the United States adopted the law of the State of Oregon as law for the Territory of Alaska. *See* An act providing a civil government for Alaska, Ch. 53, 23 Stat. 24, 25-26 § 7 (1884). In 1900, however, Congress extensively revised Territorial Alaska's legal code. *See generally* An act making further provision for a civil government for Alaska, and for other purposes, Ch. 786, 31 Stat. 321 (1900).

> By the act of June 6, 1900, Congress . . . did not merely incorporate by reference the general laws of Oregon. It spelled out the law in detail in a criminal code, a code of criminal procedure, a political code, a code of civil procedure, and a civil code. According to Thomas Carter, who compiled and annotated these laws in 1900, 'The codes were mainly copied from the statutes of the State of Oregon, and to the end that adjudications by the Supreme Court of that state might remain as directly in point as possible, changes were sparingly made . . . .'

*City of Fairbanks v. Schaible*, 375 P.2d 201, 207 n. 23 (Alaska 1962) (quoting Carter's Code, Pt. 1, at xvii (1907)). Included among those laws Congress spelled out in detail was the private nuisance statute at issue herein.

*Kelter*, 4 Alaska 447, 451 (D. Ct. 3d Div. 1912) (quoting Carter's Code Pt. IV, ch. 33, § 317 (1907)). Here both the earlier and the current private nuisance statute mirror Territorial Alaska's private nuisance statute almost verbatim. The Court, therefore, finds that the Virgin Islands borrowed its private nuisance statute from Territorial Alaska. Thus, "the language of [this] Virgin Islands statute which has been taken from the statutes of another jurisdiction is to be construed to mean what the highest court of the jurisdiction from which it was taken had, prior to enactment in the Virgin Islands, construed it to mean." *Berkeley v. W. Indies Enter., Inc.*, 480 F.2d 1088, 1092, 10 V.I. 619 (3d Cir. 1973)) (examining Puerto Rican case law in interpreting borrowed Workman's Compensation statute). *Accord Gov't of the Virgin Islands v. Carr*, 451 F.2d 652, 8 V.I. 435 (3d. Cir. 1971) (examining New York case law in interpreting borrowed rape statute); *Paiewonsky v. Paiewonsky*, 446 F.2d 178, 181, 8 V.I. 421 (3d Cir. 1971) (examining Alaska case law in interpreting borrowed married woman's statute); *Williams v. Dowling*, 318 F.2d 642, 4 V.I. 465 (3d Cir. 1963) (examining California case law in interpreting borrowed Wrongful Death statute)); *James v. Henry*, 157 F. Supp. 226, 227, 3 V.I. 273 (D.V.I. 1957) ("The statutory provisions involved . . . were taken without material change from . . . the former Codes of St. Croix and St. Thomas and St. John which were in turn derived from . . . the Complied Laws of the Territory of Alaska . . . and are, therefore, to be interpreted in the light of the Alaska law."); *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the Virgin Islands*, 47 V.I. 430, 443 n.13 (Super. Ct. 2006) (noting Oregon as source of Alaskan writ of review statute subsequently borrowed by the U.S. Virgin Islands). Accordingly, the Court must consider any cases, prior to 1921, where Territorial Alaska's highest court interpreted its private nuisance statute. Exactly which court sat as Territorial Alaska's highest court, however, remains unclear since the judicial tug-of-war ended once Alaska became a state. *See, e.g., The Coquitlam v. United States*, 163 U.S. 346, 353, 16 S. Ct. 1117, 41 L. Ed. 184, 1 Alaska Fed. 457 (1896) ("the district court of Alaska is to be regarded as the supreme court of that territory . . . .") *But see Carscadden v. Territory of Alaska*, 105 F.2d 377, 383, 9 Alaska 514 (9th Cir. 1939) (discussing *Coquitlam* and subsequent congressional changes to Territorial Alaska's court system) ("because of the chance of conflicting decisions by the Alaska judges, without other remedy in the courts to avoid the conflict. . . . we think we should continue to exercise our independent judgment . . . on all questions, whether federal, general or local, until required to

'abdicate' from that practice . . . . ''). *Accord id.* at 385 n.1 (Stephens, J., dissenting) ("I can see no merit whatever in the theory that our court [United States Circuit Court of Appeals for the Ninth Judicial Circuit] is in effect the Supreme Court of Alaska for territorial local matters — a conclusion that must follow from the majority opinion.") (alteration in original). This Court need not get bogged down in that historical quagmire, however, because the District Court or the Territory of Alaska was the only court to apply Territorial Alaska's private nuisance statute prior to 1921. As the Supreme Court of the United States had held that court to be the highest court for the Territory of Alaska, this Court cannot overlook those cases for guidance.

In *Snyder v. Kelter*, the plaintiff sued the defendants for private nuisance for maintaining a brothel adjacent to her property. 4 Alaska at 447-48. The plaintiff alleged that " 'constant succession of obscene and ribald noises plainly to be heard in nearly every part of plaintiff's house emanating from said premises' " disturbed her in the use of her property as a boarding house. *Id.* at 448 (citing affidavit of plaintiff). She sought damages for lost income and an injunction to abate the nuisance. *Id.* In applying Territorial Alaska's private nuisance statute to the matter before it, the *Snyder* Court reasoned that

> the statute reads: 'Any person whose property is affected by a private nuisance.' No reason is apparent to restrict the meaning to nuisance strictly private and in no sense public. If the word 'nuisance' had been used in the statute instead of the words 'private nuisance,' it would have changed the common-law rule . . . . *It was doubtless to preserve the common-law in this respect and to avoid uncertainty* that the words 'private nuisance' were used.

*Id.* at 451-52 (quoting Carter's Code Pt. IV, ch. 33, § 317 (1907)). The *Snyder* Court concluded that Territorial Alaska's statute was a codification of the common law private nuisance tort. Accordingly, to aid the court's analysis, the Snyder Court turned to a legal treatise for the common law principle that " '[t]he same act or structure may be a public nuisance, also a private nuisance as to a person who is thereby caused a special injury other

than that inflicted upon the general public.' " *Id.* (quoting 29 *Cyclopedia of Law and Procedure* 1208 (William Mack ed. 1908)).[11]

*Snyder* is the only reported case prior to 1921 to interpret Territorial Alaska's private nuisance statute.[12] Private nuisance actions were brought prior to *Snyder*, but earlier cases did not cite the relevant statutory authority. Nonetheless, like *Synder*, those courts also turned to the common law and-legal treatises to inform their analysis. For example, in *Lindeberg v. Doverspike*, the plaintiffs alleged private nuisance and sought a permanent injunction to prevent the defendants from contaminating a watershed running onto the plaintiff's lands. 2 Alaska 177, 178-79 (D. Ct. 2d Div. 1904). The defendant ran surface water through a sluice to clean gold-bearing dirt mined on his claim. *Id.* at 179. The runoff ran into a nearby spring coursing across the plaintiffs' property and rendered it unpotable. *Id.* In denying injunctive relief, the court found that the evidence showed that the defendants' sluicing lasted a few days, that they had quit their mining claim months before, and that the plaintiffs did not shown economic loss. *Id.* at 181. The court quoted a legal treatise to underpin its conclusion that " '[a]n injunction against a private nuisance will be generally granted only where there is a strong and

---

[11] The treatise employed by the *Snyder* Court defined nuisance generally as "literally annoyance; anything which works hurt, inconvenience, or damage, or which essentially interferes with the enjoyment of life or property." 29 *Cyclopedia of Law and Procedure* 1152 (William Mack ed., 1908). It further defined a private nuisance more specifically as "anything done to the hurt, annoyance, or detriment of the lands, tenements, or hereditaments of another, and not amounting to a trespass; thus any unwarrantable, unreasonable, or unlawful use by a person of his own property, real or personal, to the injury of another constitutes a private nuisance." *Id.* at 1152-53.

[12] As Territorial Alaska's law was modeled almost exclusively on that of Oregon, *see* fn. 10 *supra*, the Court notes that by enacting a comprehensive code in 1900 for Territorial Alaska, Congress may also have intended for judicial interpretations from Oregon continue to inform Territorial Alaska's code. The Court therefore acknowledges the possibility that review of Oregon case law might further illuminate Alaska's private nuisance statute, and therefore the Virgin Islands statute as well. But Oregon was also once a territory and its laws were also borrowed from elsewhere. *See, e.g., Hardenbergh v. Ray*, 151 U.S. 112, 120, 14 S. Ct. 305, 38 L. Ed. 93 (1894) ("The provisional government of Oregon, in 1844, formally declared by its legislature that 'all the statute laws of Iowa territory, passed at the first legislative assembly of that territory . . . shall be the law of this country, unless otherwise modified.' "). As Territorial Alaskan courts had occasion to weigh Oregonian jurisprudence on their private nuisance statute, this Court declines to reach through Alaska to Oregon, and perhaps further back in time, in seeking further illumination of the private nuisance statute borrowed by the U.S. Virgin Islands.

mischievous case of pressing necessity, and not because of a trifling discomfort or inconvenience suffered by the complainant.' " *Id.* (quoting 1 Thomas Carl Spelling, *A Treatise on Extraordinary Relief in Equity and at Law* § 394 (1893)).[13] Accordingly, the court dismissed the case, holding an action at law for damages more appropriate than one in equity for injunctive relief. *Id.*

Likewise, in *Heine v. Roth*, the plaintiff also alleged private nuisance in the defendant's erection of posts, pilings, and other structures on land in front of plaintiff's property, which effectively blocked access to navigable waters of the nearby Chena River. 2 Alaska 416, 417 (D. Ct. 3d Div. 1905). The plaintiff claimed the defendant's structures interfered with his riparian rights. *Id.* at 420. In a prior proceeding, the court found that the plaintiff's riparian rights did extend to the shoreline of the river and convicted the defendant of trespass. *United States v. Roth*, 2 Alaska 257 (D. Ct. 3d Div. 1904). When the defendant refused to remove the structures, the plaintiff sought an injunction. *Heine*, 2 Alaska at 420. The question before the court was whether plaintiff had demonstrated irreparable injury warranting injunctive relief. *Id.* In analyzing that question, the court examined case law from New York, Illinois, and Alabama cases, among others, and legal treatises to inform what interferences with real property qualified as irreparable harm, warranting injunctive relief. *Id.* at 420-23. The court quoted one treatise at length for the position that " '[b]y the term "irreparable injury" it is not meant that there must be no physical possibility of repairing the injury. All that is meant is that the injury would be a grievous one, or at least a material one, and not adequately reparable by damages . . . .' " *Id.* at 420-21 (quoting William Williamson Kerr, *A Treatise on Law and Practice of Injunctions in Equity* 200 (1871)).[14] The court found the defendant's structures

---

[13] That treatise defined private nuisances as "anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." 1 Thomas Carl Spelling, *A Treatise on Extraordinary Relief in Equity and at Law* § 373 (1893).

[14] That treatise employed by the *Heine* Court defined nuisance broadly as

> an act unaccompanied by an act of trespass, which causes a substantial injury to the corporeal or incorporeal hereditaments of other persons. Where a man wrongfully disturbs another in the exclusive possession of property, he commits a trespass. Where the infringement of the right is the consequence of an act, which is not in itself an invasion of property, the cause from which the injury flows is termed a nuisance. In one case it

interfered with the plaintiff's use and enjoyment of his lands and granted an injunction compelling their removal. *Id.* at 426.

█ In *Lindeberg, Heine,* and *Snyder,* Territorial Alaskan courts turned to the common law and to legal treatises to inform their analysis and understanding of the private nuisance actions before them. Moreover, *Snyder,* unlike *Lindeberg Heine,* found that Territorial Alaska's private nuisance statute was declaratory of the common law private nuisance tort first before it turned to legal treatises. The Court has uncovered no Alaskan case prior to 1921 that either disagreed with the *Snyder* Court's conclusion or held Alaska's private nuisance statute to have altered, amended, expanded, or derogated from the common law. Thus, in interpreting our private nuisance statute borrowed from Territorial Alaska, the Court must follow the conclusion of the *Snyder* Court: Section 331 of Title 28 of the Virgin Islands Code is also declaratory of the common law tort of private nuisance.

█ In the U.S. Virgin Islands courts have been required for many years now to turn to the common law to inform their decisions. *See generally* V.I. CODE ANN. tit. 1, § 4 (1996). In fact, this requirement has been in place as far back as the enactment of the 1921 Codes. *Id.* (source note) (quoting Code of St. Croix/Code of St. Thomas & St. John, tit. IV, ch. 13, § 16 (1921)) ("[t]he common law of England as adopted and understood in the United States shall be in force in this District, except as modified by this ordinance.") In later promulgating the 1957 Codes, the Legislature revised this requirement to direct courts first, in instances where local law was absent, to the restatements of the law as promulgated by the American Law Institute before turning to the common law in general. In this instance, local law is not absent as a statute is in place, but what falls within the scope of that statute is absent. Thus, employing the statutory requirement here is appropriate in analyzing our borrowed private nuisance statute. Accordingly, the Court now turns to the Restatement (Second) of Torts.[15]

---

is the immediate act which causes the injury, in the other the injury is the consequence of an act done beyond the bounds of the property affected by it.

William Williamson Kerr, *A Treatise on Law and Practice of Injunctions in Equity* 333 (1871).

[15] This approach also harmonizes the approach taken in the only Virgin Islands reported case to apply the private nuisance statute. *See Boyd v. Latalladi,* 8 V.I. 173 (Mun. Ct. 1971).

■ Under the Restatements, private nuisance is an "invasion of another's interest in the private use and enjoyment of land." RESTATEMENTS (SECOND) OF TORTS § 821D (1977). Use and enjoyment of one's land is defined broadly to include "actual present use of land for residential, agricultural, commercial industrial and other purposes, but also . . . . the pleasure, comfort, and enjoyment that a person normally derives from the occupancy of land." *Id.* § 821D cmt. b. The invasion complained of must "cause[] significant harm, of a kind that would be suffered by a normal person in the community . . . . " *Id.* § 821F. That harm must be "of importance, involving more than slight inconvenience or petty annoyance. . . . [T]here must be a real and appreciable interference . . . . " *Id.* § 821F cmt. c. Noise and offensive smells are two examples of invasions that might affect one's enjoyment of property. *See id.* § 824 cmt b.

■ In addition to being harmful and interfering, an invasion must also be both intentional and unreasonable. *Id.* § 822. An invasion is intentional when the person causing it "knows that [the invasion] is resulting or is substantially certain to result from his conduct." *Id.* § 825(b). An invasion is unreasonable when either "(a) the gravity of the harm outweighs the utility of the actor's conduct, or (b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible." *Id.* § 826(a)-(b). An invasion may also be unreasonable "if the harm is significant and it would be practicable for the actor to avoid the harm in whole or in part without undue hardship." *Id.* § 830.

## IV. PLAUSIBILITY DETERMINATION

■ Taking Plaintiff's allegations as true, the Court finds that Plaintiff has pleaded that (1) he has resided on Plot 7-H for ten years; (2) that he purchased the property with the knowledge of a nearby remote switch operated by Defendant; (3) that in March 2010, Defendant began installing a new remote switch; (4) that, unlike the old switch, the new switch now emits a constant humming sound that Plaintiff can hear day and night, both inside and outside his home; and (5) that the sound emitting from operation of that new switch disturbs Plaintiff in the quiet enjoyment of his property to such a degree that it has resulted in discomfort, loss of sleep, stress, and other physical maladies. The complaint pleads who, what, where, when, and how — sufficient

information to put Defendant on notice of the conduct and actions Plaintiff complains of.

The Court also finds that Plaintiff has sufficiently alleged and shown (1) that his property and also his enjoyment of his property are being affected by a private nuisance; (2) that the invasion of his property is recurrent; (3) that the Defendant caused the invasion through installation and operation of its new remote switch; (4) that Defendant thus is aware of the invasion; (5) and that the invasion is causing him harm and is of such a nature that no amount of money could remedy it. Although Plaintiff did not specify in his complaint the legal authority for his private nuisance claim, a statute exists to supply that basis. Plaintiff has therefore alleged and shown sufficient facts in support of his claim for private nuisance based on noise such that relief could be granted to him were he to prevail at trial.

## V. CONCLUSION

Accordingly, for the reasons stated above, Defendant's motion to dismiss will be denied under separate order of even date.