**XAVIER TORMOS CIFRE, as Successor Trustee of the Cifre Family Trust I, XAVIER TORMOS CIFRE, INDIVIDUALLY, WENDALL CIFRE, and JOSE ANTONIO ROSARIO, Plaintiffs**

**v.**

**DAAS ENTERPRISES, INC., Defendant**

Case No. ST-2012-CV-701

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

April 24, 2015

JENNIFER JONES, ESQ., Law Offices of Jennifer Jones, St. Thomas, USVI, *For the Plaintiffs.*

CHARLES S. RUSSELL, JR., ESQ., Moore, Dodson and Russell, P.C., St. Thomas, USVI, *For the Defendant.*

FRANCOIS, *Judge*

## MEMORANDUM OPINION

(April 24, 2015)

On February 14, 2014, Defendant Daas Enterprises, Inc. ("Daas") filed Defendant's Motion for Summary Judgment (Monetary Damage Claims), (Daas' "Motion").[1] Plaintiffs filed their Opposition on March 10, 2014, and Daas filed its Reply on March 24, 2014. On July 8, 2014, the Court heard oral arguments on the parties' filings. The written and oral arguments presented by the parties demonstrate that there is no genuine dispute of material fact concerning the existence of certain categories of damages allegedly sustained by Plaintiffs. Damages are an essential

---

[1] Attorney Jennifer Jones represents the Plaintiffs. Attorney Charles S. Russell Jr., of Moore Dodson & Russell, P.C., represents the Defendant.

element of the claims implicated by Daas' Motion, and Plaintiffs have failed to substantiate their alleged damages in several instances. To the extent that Plaintiffs' claims rest exclusively upon categories of damages that have not been substantiated, summary judgment will be granted in Daas' favor on those claims. To the extent that Plaintiffs have not produced any evidence of the damages that they have allegedly suffered, the Court will treat as established the fact that Plaintiffs did not suffer those categories of alleged damages. The remainder of Daas' Motion will be denied.

## BACKGROUND

Daas is constructing a building off of Moravian Highway on real property known as Parcel Nos. 70, 82, & 83 Estate Contant, 7A Southside Quarter, St. Thomas (the "Construction Site" or "Site"). Parcel No. 40 Estate Contant, 7A Southside Quarter, St. Thomas ("Parcel 40") is adjacent to the Construction Site along the Site's western boundary, and Parcel 67 Estate Contant, 7A Southside Quarter, St. Thomas ("Parcel 67") is adjacent to the Construction Site along the Site's northern boundary (Parcel 40 and Parcel 67 are collectively referred to as the "Trust Property"). The Trust Property also includes a building constructed on Parcel 67 (the "Boxing Building"). Plaintiff The Cifre Family Trust I (the "Trust") owns the Trust Property, and rented the Boxing Building to Plaintiff Jose Antonio Rosario ("Rosario"), who used it as a facility to train boxers.

Plaintiffs initially sued to enjoin Daas' construction activity and compel Daas to underpin the lateral support for the Trust Property. On April 11, 2013, Plaintiffs moved to amend their First Amended Complaint. Plaintiffs' proposed Second Amended Complaint added a paragraph to their claim for trespass[2] and a line in their prayer for relief requesting compensatory, special, and punitive damages.[3] It also added allegations that Daas had cut away a portion of a road located on the Trust Property, thereby harming Plaintiffs.[4] By Order dated March 11, 2014, the Court granted Plaintiffs' Motion to File Second Amended Complaint and

---

[2] Pls.' 2d Am. Compl. ¶ 92.

[3] *Id.* at 16, wherefore clause.

[4] *Id.* ¶¶ 50-55.

accepted Plaintiffs' Second Amended Complaint. By this time, however, discovery had closed and Daas had filed the Motion now before the Court.

On April 23, 2013, after Plaintiffs had moved to file the Second Amended Complaint, the parties settled the portion of the lawsuit pertaining to the underpinning of the Trust Property, and Daas subsequently underpinned the lateral support to the Trust Property. The Court acknowledged this partial settlement and ordered "that all remaining claims[ ] not involving the structural underpinning of the Trust Property shall be reserved for trial for damages or other injunctive relief as appropriate."[5]

After the Court's Order reserving trial on damages, the parties submitted a Stipulation for Entry of Second Supplemental Scheduling Order to the Court.[6] The proposed Second Supplemental Scheduling Order stated that "[a]ll written fact discovery has been concluded, and is now closed," and that Plaintiffs would file any supplemental expert reports on or before December 1, 2013. The Court rejected the parties' proposed deadlines, ordered the parties to conduct mediation, and extended the deadline for the completion of fact discovery through November 15, 2013. The Court-ordered deadline or fact discovery has passed, and the parties did not settle Plaintiffs' remaining claims through mediation.

Daas now moves for summary judgment on "all or part of Plaintiffs' categories of alleged monetary damage claims," claiming that Plaintiffs have not produced any evidence that Daas' conduct proximately caused Plaintiffs to sustain monetary damages.[7]

## SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."[8] The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of any material fact

---

[5] Order 1 (Apr. 29, 2013).

[6] The proposed Stipulation was filed on June 21, 2013, and bears the signatures of the attorneys for both parties.

[7] Def.'s Mot. for Summ. J. 1.

[8] FED. R. CIV. P. 56(a). Federal Rule of Civil Procedure 56 applies to this case through the operation of Superior Court Rule 7.

and that it is entitled to judgment as a matter of law.[9] This burden may be met by pointing out that there is an absence of evidence to support a particular element of the nonmoving party's case.[10]

Once the moving party makes its showing, the opposing party must "make a showing sufficient to establish existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."[11] The opposing party "may not rest on mere allegations but must present actual evidence showing a genuine issue for trial."[12] The party opposing summary judgment "shall affix to [its brief] copies of, and cite to, the precise portions of the record relied upon as evidence of each material fact."[13] The opposing party must provide more than a scintilla of supporting evidence to survive a motion for summary judgment.[14]

The Court will consider the evidence provided by both parties and view all inferences to be drawn from that evidence in a light most favorable to the nonmoving party before ruling.[15] If the Court does not grant all of the relief requested by the motion, it "may enter an order stating any material fact — including an item of damages . . . that is not genuinely in dispute and [treat] that fact as established in the case."[16] "A fact is material if it can affect the outcome of the case,"[17] and a genuine dispute exists if the evidence is such that a reasonable jury could find in favor of the nonmoving party on the disputed fact.[18]

---

[9] FED. R. CIV. P. 56(a).

[10] Id. 56(c)(1)(B). Accord Bordreaux v. Swift Transportation Co. Inc., 402 F.3d 536, 544 (5th Cir. 2005); Martinez v. CO2 Services, Inc., 12 Fed. Appx. 689, 694 (10th Cir. 2001); Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000): Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

[11] Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

[12] Williams v. United Corp., 50 V.I. 191, 194-95 (V.I. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

[13] LRCi 56.1(b). Local Rule of Civil Procedure 56.1 applies to these proceedings through the operation of Superior Court Rule 7.

[14] Joseph v. Hess Oil Virgin Islands Corp., 54 V.I. 657, 664 (V.I. 2011).

[15] Id.

[16] FED. R. CIV. P. 56(g).

[17] Burd v. Antilles Yachting Services, Inc., 57 V.I. 354, 360 (V.I. 2012) (quoting Anderson, 477 U.S. at 254) (internal quotation marks omitted).

[18] Anderson, 477 U.S. at 248.

## ANALYSIS

Plaintiffs' Second Amended Complaint contains six counts: 1.) damages/loss of lateral support/strict liability; 2.) negligence; 3.) public and private nuisance; 4.) adverse possession; 5.) action to quiet title; and 6.) trespass.[19] Daas claims that money damages are not the appropriate remedy for claims of adverse possession, quiet title, and trespass,[20] and thus has not moved for summary judgment on the last three counts of Plaintiffs' Second Amended Complaint.

### I. DAAS IS ENTITLED TO SUMMARY JUDGMENT ON COUNT ONE OF PLAINTIFFS' SECOND AMENDED COMPLAINT.

Count One of Plaintiffs' Second Amended Complaint purports to state a claim for loss of lateral support under a theory of strict liability.[21] No binding authority in this jurisdiction has recognized a cause of action for loss of lateral support, let alone a cause of action for loss of lateral support premised on strict liability. Before it can evaluate the merits of Daas' Motion, the Court must determine to what extent the common law of this jurisdiction embraces such a claim.[22]

#### a. This jurisdiction recognizes a common-law cause of action for the loss of naturally necessary lateral support.

 There are no opinions from the Territorial Court of the Virgin Islands, the Superior Court of the Virgin Islands, the United States District Court for the Virgin Islands or its Appellate Division, or from the United States Court of Appeals for the Third Circuit sitting as the de facto court of last resort for this Territory that address Plaintiffs' putative cause of action. However, a clear majority of jurisdictions hold that an owner of land owes an absolute duty to provide naturally necessary lateral support to adjoining land, and is liable for damages when the removal of naturally

---

[19] Pls. 2d Am. Compl. ¶¶ 56-94.

[20] Def.'s Mot. for Summ. J. 6.

[21] 2d Am. Compl. 10.

[22] *Government of the Virgin Islands v. Connor*, 60 V.I. 597, 603 (V.I. 2014) (clarifying that, "when considering a question of law not foreclosed by prior precedent," the Superior Court must consider the three factors identified in *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011)).

necessary lateral support causes subsidence on adjoining property.[23] If the removal of naturally necessary lateral support causes subsidence on adjoining property that, in turn, damages an artificial addition to that property, the party who removed the naturally necessary lateral support is liable for damage to the adjoining land and its artificial additions.[24] Liability is predicated upon whether "the soil will crumble away under its own weight," regardless of the presence of artificial additions.[25] If the soil cannot sustain its own weight and subsidence results, a plaintiff may

---

[23] *Nichols v. Woodward Iron Co.*, 267 Ala. 401, 103 So.2d 319, 324 (1958); *Joseph v. Jones*, 639 P.2d 1014, 1018-19 (Alaska 1982); *Urosevic v. Hayes*, 267 Ark. 739, 590 S.W.2d 77, 79 (Ark. Ct. App. 1979); *Marin Municipal Water Dist. v. Northwestern Pacific Railroad Co.*, 253 Cal. App. 2d 83, 61 Cal. Rptr. 520, 524 (1967); *Gladin v. Von Engeln*, 575 P.2d 418, 422 (Colo. 1978); *Nampa & Meridian Irrigation District v. Mussell*, 139 Idaho 28, 72 P.3d 868, 872-73 (2003); *First Nat. Bank & Trust Co. of Rockford v. Universal Mortgage and Realty Trust*, 38 Ill. App. 3d 345, 347 N.E.2d 198, 199 (1976); *Spall v. Janota*, 406 N.E.2d 378, 381 (Ind. Ct. App. 1980); *Pacific Indemnity Co. v. Rathje*, 188 N.W.2d 338, 340 (Iowa 1971); *Sanders v. State Highway Commission*, 211 Kan. 776, 508 P.2d 981, 987-88 (1973); *Levi v. Schwartz*, 201 Md. 575, 95 A.2d 322, 326 (1953); *Ahern v. Warner*, 16 Mass. App. Ct. 223, 450 N.E.2d 662, 665 (1983); *Brewitz v. City of St. Paul*, 256 Minn. 525, 99 N.W.2d 456, 462 (1959); *Lerner Jewelers, Inc. v. Glascock, Inc.*, 199 So. 2d 66, 69 (Miss. 1967); *St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc.*, 589 S.W.2d 260, 267 (Mo. 1979) (en banc); *Barber v. Hohl*, 40 N.J. Super. 526, 123 A.2d 785, 788 (1956); *Tilbro Home Builders, Inc. v. Leidel*, 42 A.D.2d 578, 344 N.Y.S.2d 614, 617 (1973); *Waters v. Biesecker*, 309 N.C. 165, 305 S.E.2d 539, 541 (1983); *Swinehart v. Ritter*, C.A. No. 9002, 1979 Ohio App. LEXIS 9754 (Ohio Ct. App. Feb. 22, 1979); *Phipps v. Busic*, 521 P.2d 1048, 1049 (Or. 1974); *Albert v. Wright*, 410 Pa. 383, 189 A.2d 753, 755 (1963); *Tucci v. MacLain*, 85 R.I. 268, 129 A.2d 783, 785 (1957); *Momeier v. Koebig*, 220 S.C. 124, 66 S.E.2d 465, 467 (1951); *Williams v. Southern Railway. Co.*, 396 S.W.2d 98, 100 (Tenn. Ct. App. 1965); *Carrion v. Singley*, 614 S.W.2d 916, 917 (Tex. Ct. App. 1981); *Lee v. Lemon*, 84 Va. Cir. 508, 508 (2012); *Bostock v. City of Burlington*, 30 A.3d 651, 652-53 (Vt. 2011); *Klebs v. Yim*, 54 Wn. App. 41, 772 P.2d 523, 524 (1989); *Noone v. Price*, 171 W. Va. 185, 298 S.E.2d 218, 221 (1982); *Schmidt v. Chapman*, 26 Wis. 2d 11, 131 N.W.2d 689, 693-94 (1964).

[24] *Williams*, 396 S.W.2d at 100; *Bay v. Hein*, 9 Wn. App. 774, 515 P.2d 536, 538 (1973). *See also Noone*, 298 S.E.2d at 221 (holding that, when land in its natural state that is capable of supporting a building and the building is damaged by subsidence caused by an adjoining property owner, the building's owner may recover for damages to the building as well as the land); *Williams v. Anderson Const. Co.*, 105 F. Supp. 497, 498 (D. Alaska 1952) (same); *Smith v. Howard*, 256 S.W. 402, 406 (Ky. Ct. App. 1923) (same). *Accord* RESTATEMENT (SECOND) OF TORTS § 817 cmt. n.

[25] *Williams*, 396 S.W.2d at 100. *Accord Noone*, 298 S.E.2d at 220-21; *Bay*, 515 P.2d at 538.

recover for damage to its artificial additions as well as damage to its land, However, liability will only flow from subsidence that is substantial.[26]

Jurisdictions employ various approaches to determine the appropriate measure of damages in an action premised on the loss of naturally necessary lateral support.[27] Some jurisdictions have looked to the diminution of a property's value.[28] Other jurisdictions have calculated damages based on the cost of restoring a property.[29] Still other jurisdictions have set damages at the cost of repairing the damaged land plus any diminution in value that repair was not able to cure.[30] Some jurisdictions have focused on the actual value of destroyed property.[31] Finally; some jurisdictions have measured damages based on either the cost of repair or the diminution of value, whichever is less.[32] There is no clear majority position amongst these approaches.

■ In accord with the weight of authority, the soundest rule for the Virgin Islands is to recognize that one who withdraws the naturally necessary lateral support of adjoining property will be liable to the owner of the adjoining property for damages cause by subsidence that occurs as result. Because it would be an inefficient use of judicial resources to adjudicate claims over minor shifts in topsoil, a putative plaintiff bears the burden of proving that the alleged subsidence was substantial. However, this jurisdiction is not served by adopting a specific measure of damages for claims pertaining to the loss of lateral support. Adopting a specific measure of damages may disincentivize future courts from calculating an

---

[26] *Ahern*, 450 N.E.2d at 665; *Levi*, 95 A.2d at 326; *Lusardi v. Kensington Building Corp.*, 220 S.W.3d 304, 306 (Mo. Ct. App. 2005): *Bostock*, 30 A.3d at 653. *See generally* RESTATEMENT (SECOND) OF TORTS § 817 cmt. i (explaining that "the fall of a few grains of sand is not actionable").

[27] *See generally* W.W. Allen, Annotation, *Measure of Damages for Loss of or Interference with Lateral Support*, 36 A.L.R.2d 1253 (1954) (discussing the various methods for computing damages for the loss of lateral support).

[28] *Barry v. Chicago, Indianapolis & St. Louis Short Line Railway Co.*, 149 Ill. App 626, 627 (1909); *McGrath v. Heman Construction Co.*, 167 S.W. 1086, 1087 (Mo. Ct. App. 1914).

[29] *Mayer v. Ford*, 12 So. 2d 618, 620-21 (La. Ct. App. 1943); *Austin v. Hudson River Railroad Co.*, 25 N.Y. 334, 341-42 (1862).

[30] *Art Club of Philadelphia v. Heyman & Goodman*, 325 Pa. 587, 190 A. 922, 924 (1937); *Bator v. Ford Motor Co.*, 269 Mich. 648, 257 N.W. 906, 913 (1934).

[31] *Durante v. Alba*, 266 Pa. 444, 109 A. 796, 798 (1920).

[32] *Spall v. Janota*, 406 N.E.2d 378, 384 (Ind. Ct. App. 1980); *Levi v. Schwartz*, 201 Md. 575, 95 A.2d 322, 326 (1953).

appropriate measure of damages based on the facts of each case. Additionally, because there is not a clear majority of jurisdictions that favor one approach over another, any decision to adopt a specific measure of damages would be either arbitrary, or too specific to the facts of this case to provide a meaningful guidepost for later opinions. Since courts must ultimately determine how costs will be internalized amongst litigants, the soundest rule for the Virgin Islands is to determine the appropriate measure of damages for claims premised on a loss of lateral support on a case-by-case basis.

### b. Daas is entitled to summary judgment on Plaintiffs' claim for loss of lateral support.

The only damages recoverable under the rule adopted in the preceding section are damages that result from subsidence caused by the withdraw of naturally necessary lateral support. The term subsidence generally refers to the "downward movement of the soil from its natural position; esp., a sinking of soil,"[33] but subsidence may occur in other forms besides sinking.[34] Here, Plaintiffs have produced no evidence that subsidence has occurred on the Trust Property. Since Plaintiffs have produced no evidence that they have suffered the damages upon which a claim for loss of lateral support must be maintained, no reasonable jury could determine that Plaintiffs can prevail on Count One of their Second Amended Complaint.

Plaintiffs have attached to their Opposition an engineering assessment prepared by their expert, Graflon Rodriguez. On page 8 of his report, Rodriguez states that "it is reasonable to expect that the effect of vibration on the [Boxing Building's] foundation resulted in downslope movement of the existing base and sub-base material, soil consolidation and consequent settlement." This sentence could be read to suggest that the Trust Property experienced subsidence. However, nowhere in the report does Rodriguez opine that Daas' construction activity caused these vibrations, or that downslope movement actually occurred on the Trust Property.

---

[33] BLACK'S LAW DICTIONARY 1565 (9th ed. 2009).

[34] *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 817 cmt. h (explaining that subsidence may be "any movement of the soil from its natural position," including, "shifting, fall in slipping, seeping or oozing of the soil").

Rodriguez' deposition testimony clarifies the observations made in his report. Rodriguez testified that he saw no evidence that Daas' excavation had undermined the foundation of the Boxing Building.[35] He stated that "downslope movement [of the Boxing Building] is not a concern,"[36] and that, during his inspection he did not see any evidence of differential settlement[37] or downslope movement of the building.[38] Rodriguez also testified that voids could form under the Boxing Building, which voids could affect the settlement of the foundation.[39] But Rodriguez stated that he could not determine if those voids existed without performing additional testing, and that additional testing would not reveal whether the voids were caused by Daas' construction, by water infiltrating from the north side of the property, by the expansion or contraction of clay under the soil, or by other causes.[40] Rodriguez was also asked whether he saw evidence of blowouts[41] on the face of the excavation cut parallel to the Boxing Building. He testified that he saw "one area that probably might fall in that category," and described it as an "area maybe a foot or 8 inches" into the face of the cut.[42] He testified that he did not see any material that had been removed or excavated from underneath the building.[43] When read in their totality, Rodriguez' report and testimony do not constitute evidence that the Trust Property experienced subsidence as a result of Daas' construction activity.

Further, Rodriguez' report was not meant to ascertain whether subsidence had occurred on the Trust Property. At the outset of his deposition, Rodriguez explained that he was "assessing the [Boxing Building] for deterioration and evidence of possible structural failure."[44] He did not state that the purpose of his inspection was to determine

---

[35] Dep. Tr. of Grafton Rodriguez 50, 115.

[36] *Id.* at 55.

[37] *Id.* at 82.

[38] *Id.* at 87.

[39] *Id.* at 88.

[40] *Id.* at 90.

[41] For the purposes of Rodriguez' deposition, Daas' attorney defined a "blowout" as "where rock material had come out of the face of the excavation after the cut had been made." *Id.* at 48.

[42] *Id.* at 49.

[43] *Id.* at 50, 144.

[44] *Id.* at 25.

whether subsidence had occurred on the Trust Property. Rather, his report discusses the potential effect of vibrations on the Boxing Building. According to the report, the term "peak particle velocity" ("PPV") describes a measure of vibrations, and PPV is measured in terms of inches per second, or "ips." In his report, Rodriguez explains that, in order to limit damage, industry standards limit PPV to 2.0 ips. But he does not claim that Daas' construction activity produced vibrations near to, or in excess of 2.0 ips, or that those vibrations caused cracks to appear in the Boxing Building. Even if he did, Daas cannot be liable for damages to artificial additions on the Trust Property under the rule adopted above unless Plaintiffs first demonstrate that Daas created subsidence on the Trust Property. Rodriguez' report does not conclude that subsidence occurred on the Trust Property.

Rodriguez' observations mirror the observations of Daas' expert, Paul Ferreras, Ferreras observed that the sedimentary rock exposed by the cut "appeared stable," and was not "bulging out," and that he "didn't see any areas of boulders falling down the hill from the undisturbed areas."[45] He also testified that he did not observe any downslope movement of the Boxing Building.[46] Ferreras' observations do not constitute evidence that subsidence occurred on the Trust Property, or that Plaintiffs were damaged as a result.

Plaintiffs have also attached a copy of a stop work order to their Opposition, which order was issued by the Virgin Islands Department of Planning and Natural Resources on May 24, 2012. The stop work order states that "[a] building at the rear of [Daas' construction] site has shown signs of structural cracking in floor slabs and wall sections," but provides no explanation for the cause of that cracking. DPNR sent Phillip Smith to investigate the site. In his deposition, Smith testified that "no cause and effect conclusions were made" concerning whether Daas' construction activity had damaged the Boxing Building.[47] Thus, the May 24, 2012 stop work order does not constitute evidence that Daas' construction caused subsidence on the Trust Property.

Plaintiffs attached a copy of a second stop work order from DPNR, which is dated September 28, 2012. The second stop work order

---

[45] Dep. Tr. of Paul Ferreras 37.

[46] *Id.* at 97-98.

[47] Dep. Tr. of Phillip Smith 12.

references the same inspection cited in the first stop work order. The second stop work order is not based on any new evidence, and thus does not constitute evidence that Daas' construction caused subsidence on the Trust Property.

In addition to Rodriguez' report and the DPNR stop work orders, Plaintiffs have attached photographs and excerpts of other deposition testimony to their Opposition. Specifically, Plaintiffs have submitted excerpts from the depositions of Rosario, Plaintiff Xavier Tormos Cifre, Ahed Daas, and Ferreras. Plaintiffs have also attached a copy of an email from Ferreras, in which he recommended underpinning the lateral support of the Trust Property. None of these materials indicate that subsidence occurred on the Trust Property,

In their Opposition, Plaintiffs argue that "[t]he general restatement rule prescribed in § 929 of the Restatement (Second) of Torts applies in cases of tortious injury to property."[48] Plaintiffs are incorrect. First, the Supreme Court of the Virgin Islands has not recognized that the principle of law summarized in Section 929 represents the law of this jurisdiction. Consequently, this Court is not bound to apply Section 929 to this case. Second, Section 929 is entitled "Harm to Land from Past Invasions," and pertains to situations where a defendant has physically intruded onto a plaintiff's property.[49] In contrast, a loss of lateral support claim is premised on the withdrawal of lateral support to another's land, an act that necessarily occurs outside of a plaintiff's property. The Restatement section cited by Plaintiffs pertains to a different injury than Plaintiffs allege, and thus would not guide this Court's decision even if it represented binding authority.

Plaintiffs also argue that the Court had not accepted their Second Amended Complaint at the time they filed their Opposition, and that they should be given the opportunity to conduct further discovery. This argument is unavailing for several reasons. First, Plaintiffs have not requested an extension of discovery deadlines. Second, a comparison of the original Complaint and the Second Amended Complaint reveals that Plaintiffs' loss of lateral support claim has not changed since this case was tiled. Plaintiffs have had an opportunity to discover evidence that Daas'

---

[48] Pls.' Opp. to Def.'s Mot. for Summ. J. 8.

[49] *See* RESTATEMENT(SECOND) OF TORTS § 929 cmt. a (discussing liability premised on oil seepage or dust settlement).

construction caused subsidence on the Trust Property since this case began. Third, this Court has ordered "that all remaining claims, not involving the structural underpinning of the Trust Property, *shall be reserved for trial for damages* or other injunctive relief as appropriate."[50] Plaintiffs have been on notice since receipt of that Order that there would be a trial on damages, and could have conducted additional discovery to substantiate their alleged losses. Finally, although each party had previously acknowledged that "all written and fact discovery has been completed,"[51] the Court nonetheless extended the deadline for the completion of fact discovery. Given Plaintiffs' numerous opportunities to conduct discovery, and in consideration of the fact that Plaintiffs previously represented that no further discovery was necessary, the Court is not persuaded that Plaintiffs are entitled to yet another chance to conduct discovery.

In order to survive summary judgment on their first cause of action, Plaintiffs were required to substantiate the existence of subsidence as a result of Daas' construction activity. Plaintiffs have presented no evidence that the Trust Property experienced subsidence. Even if they had, Plaintiffs have produced no evidence from which an award of damages could be calculated. Plaintiffs have not submitted any reports estimating a diminution of the Trust Property's value, or an estimate for repairing the damages allegedly sustained by the Boxing Building. Accordingly, there is no genuine dispute of material fact as to whether Plaintiffs have sustained the type of damage necessary to support a claim for loss of lateral support. Daas is therefore entitled to summary judgment on Count One of Plaintiffs' Second Amended Complaint.

## II. DAAS IS NOT ENTITLED TO SUMMARY JUDGMENT ON COUNT TWO OF PLAINTIFFS' SECOND AMENDED COMPLAINT, BUT IS ENTITLED TO SUMMARY JUDGMENT ON CERTAIN CATEGORIES OF DAMAGES CLAIMED BY PLAINTIFFS.

Count Two of Plaintiffs' Second Amended Complaint purports to state a claim for negligence. To prevail on a negligence claim, a plaintiff

---

[50] Order (Apr. 29, 2013) (emphasis supplied).
[51] Proposed Second Supplemental Scheduling Order 2 (June 21, 2013).

must introduce evidence of duty, breach, causation, and damages.[52] The failure to support a single element constitutes grounds for summary judgment against a plaintiff.[53] A plaintiff is entitled to compensatory damages only if "he establishes by proof the extent of the harm and the amount of money representing adequate compensation with as much certainty as the nature of the tort and the circumstances permit."[54] For Plaintiffs' negligence claim to survive summary judgment, they must substantiate their alleged damages with some evidence thereof.

As of March 10, 2014, the date of Plaintiffs' Opposition, Plaintiffs have claimed damages for lost rent, the off-island training of boxers, impact to business interests, and diminished value to property.[55] In their Opposition, Plaintiffs also claim that they were damaged when Daas allegedly cut away a portion of a road servicing the Trust Property and constructed a retaining wall that allegedly causes stormwater to accumulate on the Trust Property.[56] Daas alleges that, although "proof of proximately caused monetary damages are [sic] a necessary element of Plaintiffs' negligence claim," Plaintiffs have not provided proof for any of the categories of damages that they have allegedly suffered.[57] Plaintiffs' negligence claim only survives summary judgment because Plaintiffs have introduced evidence from which a jury could conclude that the Trust lost rent as a result of Daas' alleged negligence. Plaintiffs have provided absolutely no evidence to substantiate the remaining categories of alleged

---

[52] *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014).

[53] *See Celotex Comp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (stating that the party opposing summary must establish the existence of every element essential to their case on which they will bear the burden of proof at trial). Accord *Bertrand v. Cordiner Enterprises, Inc.*, Case No. ST-08-CV-457, 2013 V.I. LEXIS 67, *13 (V.I. Super. Ct. Nov. 15, 2013) (observing that the plaintiff's failure to establish the element of causation entitled the defendants to summary judgment).

[54] *Maso v. Morales*, 57 V.I. 627, 635 (V.I. 2012).

[55] During oral argument on Defendant's Motion for Summary Judgment, the Plaintiffs represented to the Court that they would only be proceeding on the categories of damages identified in Plaintiffs' Second Supplemental Initial Disclosure. Those disclosures have not been provided to the Court, and thus cannot be considered.

[56] Pls.' Opp. to Def.'s Mot. for Summ. J. 9.

[57] Def.'s Mot. for Summ. J. 7-8.

damages. Consequently, the absence of any other category of damages will be treated as an established fact.[58]

A notice of service filed with the Court indicates that Plaintiffs supplemented their initial Rule 26 disclosures for a second time on April 10, 2014. At oral argument, Plaintiffs proffered that this supplementation included financial records from various nonparties to this litigation. Yet Plaintiffs have made no attempt to provide this information to the Court as a supplement to their Opposition. Because none of this material was appended to Plaintiffs' Opposition or subsequently provided to the Court, the following analysis does not consider the alleged evidence produced in Plaintiffs' Second Supplemental Initial Disclosure.

### a. Genuine disputes of material fact exist concerning whether Plaintiffs are entitled to compensatory damages for lost rent.

The first item of damages identified in Plaintiffs' Supplemental Initial Disclosures is "Past Rent" in the amount of "$16,000 [sic] per month (10 months and counting)," and "Future Rent" in the amount of "$6,400 (approximately)."[59] In their Statement of Additional Facts, Plaintiffs claim that Rosario had a verbal lease agreement with the Trust, that Daas' construction caused Rosario to leave the building, and that Rosario stopped paying rent to the Trust as a result.[60] Plaintiffs support these claims with excerpts of deposition transcripts, which establish that Rosario stopped paying rent in April of 2012, and that his rent was $1,600 per month under his agreement with the Trust.[61] Daas denies Plaintiffs' claim that the Boxing Building was unsound and could no longer be occupied by Rosario.[62] Thus, there are genuine disputes of material facts, i.e. whether the Boxing Building was usable and whether the Trust lost rent.

---

[58] The Court may treat any material fact, including an item of damages, as established if there is no genuine dispute concerning that fact. FED. R. CIV. P. 56(g). Such a finding is particularly appropriate for Plaintiffs' remaining categories of alleged damages because Plaintiffs have submitted no evidence whatsoever to substantiate their alleged losses.

[59] See Def.'s Mot. for Summ. J. 3 (containing an uncontested statement of the contents of Plaintiffs' Supplemental Initial Disclosure).

[60] Pls.' Opp. to Def.'s Mot. for Summ. J. 4.

[61] Tr. Trans. 74, 75 (Mar. 26, 2013).

[62] Def.'s Reply Mem. 2-3.

■■■■■■■■■■■■

### b. Plaintiffs have not demonstrated a genuine dispute of material fact concerning alleged damages for training boxers elsewhere.

■ The second item of damages identified in Plaintiffs' Supplemental Initial Disclosures is damages for "Training of Boxers," which allegedly consists of "$1,500 approximately" for "Gym time (UVI)" and "$25,000 approximately" for "Travel and Training."[63] Plaintiffs allege that, without the ability to use the Boxing Building, Rosario sent his boxers to train in California and had to assume a portion of the cost for doing so.[64] This claim is not supported by the evidence in the record. Excerpts of Rosario's deposition transcript constitute evidence that 340 Boxing LLC[65] — not Rosario — paid for the boxers' trip to California.[66] These excerpts also constitute evidence that other unnamed individuals may have made payments on behalf of 340 Boxing LLC,[67] but the excerpts provided do not identify these individuals, the payments they allegedly made, or the reason for those alleged payments, Rosario's December 12, 2012 affidavit clarifies that "[t]he boxers had to resume training out of the territory since there was no other adequate facility for these world-class athletes in the Virgin Islands. Off-island training *resulted in additional*

---

[63] Def.'s Mot. for Summ. J. 3.

[64] *See* Pls.' Opp. to Def.'s Mot. for Summ. J. 5, at ¶ 19 (alleging that "Rosario and other members of 340 Boxing had to assume the cost for travel and training of the boxers"). Daas disputes this fact. Def.'s Reply to Pls.' Opp. to Def.'s Mot. for Summ. J. 5, at ¶ 19.

[65] *See id.* at 7 (alleging that 340 Boxing is a limited liability company).

[66] *See id.* Ex. B, at 189. That page of Rosario's deposition transcript memorializes the following exchange:

> Q: In this trip that we talked about to Oxnard, California, 340 Boxing didn't pay for that trip either, correct?
> A: Yes, we did.

[67] *See id.* Ex. B, at 197. That page of Rosario's deposition transcript memorializes the following exchange:

> Q: [beginning on the preceding page, which was not appended to Plaintiffs' Opposition] He made those payments from his — personally or in some other manner?
> A: We all do. We all do in respect to 340 Boxing.
> Q: Okay. So you're saying that they made those payments on behalf of 340 Boxing —
> A: Yes.

*expenses for 340 Boxing . . . .*"[68] Nowhere in his affidavit does Rosario claim that he expended personal funds to facilitate the boxers' off-island training. Thus, although Plaintiffs' Opposition contains the allegation that Rosario expended funds for the training of boxers, Rosario's affidavit and deposition testimony only constitute evidence that 340 Boxing LLC paid those expenses. 340 Boxing LLC exists as a distinct legal entity[69] and is not a party to this lawsuit. The fact that 340 Boxing LLC may have expended funds for the training of boxers is irrelevant to the determination of whether Plaintiffs in this lawsuit have suffered damages. Plaintiffs have not provided any evidence, whether in the form of receipts, invoices, account statements, or otherwise, that they are entitled to compensatory damages for the training of boxers. Without such evidence, there is no genuine dispute of material fact as to this category of alleged damages.

### c. Plaintiffs have not demonstrated a genuine dispute of material fact concerning alleged damages for an impact to their business interests.

The third item of damages identified in Plaintiffs' Supplemental Initial Disclosures is damages for "Impact to Business Interests."[70] This category of damages is broken into the following subcategories: "Loss of Business Opportunity," "Reduction in Boxing Events," "Impact from Lost Fights," "Past Impact to Boxers," "Loss of Future Earnings," and "Impact to the Virgin Islands Economy."[71]

Plaintiffs have not attempted to substantiate any of these subcategories of damages. Plaintiffs did not provide any evidence of earnings prior to their alleged injury, or any evidence that they would have earned something but for Daas' conduct. At the time that Plaintiffs filed their Opposition to Daas' Motion, they had taken the position that all of these damages were "incalculable."[72] Allegedly, Plaintiffs' Second Supplemental Initial Disclosure states that Plaintiffs would provide an expert report substantiating damages for lost business interests and lost

---

[68] *Id.* Ex. C. ¶ 23 (emphasis supplied).

[69] 13 V.I.C. § 1201.

[70] Def.'s Mot. for Summ. J. 4.

[71] *Id.*

[72] *Id.*

profits at some point in the future.[73] Plaintiffs' Second Supplemental Initial Disclosure was served on April 10, 2014 — after Plaintiffs filed their Opposition to Daas' Motion. This timing demonstrates that Plaintiffs had no evidence supporting their claims for lost business opportunities or lost profits when they filed their Opposition. Thus, Plaintiffs have not meet their burden of coming forward with evidence demonstrating a genuine dispute of material fact as to this category of alleged damages.

### d. Plaintiffs have not demonstrated a genuine dispute of material fact concerning the alleged diminution in value of the Trust Property.

██ The final item of damages identified in Plaintiffs' Supplemental Initial Disclosures is "Diminished Value to Property," of an "uncertain" amount.[74] Plaintiffs have provided no evidence that the Trust Property has diminished in value as a result of Daas' actions. Thus, Plaintiffs have not met their burden of coming forward with evidence that demonstrates a genuine dispute of material fact as to this category of alleged damages.

### e. Plaintiffs have not demonstrated a genuine dispute of material fact concerning Daas' alleged trespass.

Plaintiffs have also claimed that they were damaged when Daas allegedly "cut into the road constructed by the Cifre Plaintiffs thereby cutting away the swale that carried water from the Plaintiffs' property to the Moravian Highway."[75] Plaintiffs have alleged that this fact constitutes evidence of Daas' trespass as well as Daas' negligence.[76] To establish this fact, Plaintiffs rely on the deposition testimony of Ahed Daas, President of Daas, and on two photographs.

██ Neither Mr. Daas' deposition testimony nor the photographs create a genuine dispute of material fact. On page 166 of Mr. Daas'

---

[73] This content from Plaintiffs' Second Supplemental Initial Disclosure was proffered by Plaintiffs during oral argument.

[74] Def.'s Mot. for Summ. J. 4.

[75] Pls.' Opp. to Def.'s Mot. for Summ. J. 6.

[76] *Compare id.* at 6 (stating that the Plaintiffs' "Sixth Cause of Action of the First Amended Complaint alleges a trespass by Daas from cutting into a road constructed by Plaintiffs), with *id.* at 9 (arguing that the same facts constitute damages for the purposes of Plaintiffs' negligence claim).

deposition transcript, as provided by Plaintiffs, Mr. Daas testified that "we did not mess with anything west of our property line, period. Nothing. We can't." He also testified that the water still flowed down the road toward Moravian Highway.[77] The only reasonable conclusion that can be drawn from this testimony is that Daas did not cut on Trust Property, and that the cut did not divert the flow of water to Moravian Highway. The two photographs show a construction machine digging a hole. The photographs do not establish where Daas' property ends and the Trust Property begins, and thus do not constitute evidence that Daas cut on the Trust Property. Consequently, Plaintiffs have not produced evidence demonstrating a genuine dispute of material fact concerning the existence of this alleged injury.

### III. DAAS IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON COUNT THREE OF PLAINTIFFS' SECOND AMENDED COMPLAINT.

Count Three of Plaintiffs' Second Amended Complaint purports to state causes of action for both public nuisance and private nuisance.

#### a. To the extent that Plaintiffs' Second Amended Complaint states a claim for public nuisance, Daas is entitled to summary judgment on that claim.

The Supreme Court of the Virgin Islands has not yet adjudicated a public nuisance claim. However, after conducting a well-reasoned analysis as mandated by *Banks v. International Rental & Leasing Corp.*,[78] the Superior Court of the Virgin Islands, Mackay, J., defined a public nuisance as "an unreasonable interference with a right common to the general public."[79] Being satisfied with its soundness, Judge Mackay's analysis and definition are incorporated into this Memorandum Opinion by reference. From the beginning of this case, Plaintiffs have made no argument and proffered no evidence that Daas' construction has interfered with a right common to the general public. To the extent that Count Three of Plaintiffs' Second Amended Complaint states a claim for public nuisance, Daas is entitled to summary judgment on those portions of Count Three.

---

[77] Dep. Tr. of Ahed Daas 166.

[78] 55 V.I. 967 (V.I. 2011).

[79] *Bell v. Radcliffe*, Memorandum Opinion, ST-13-CV-392, 17-20 (Apr. 30, 2014).

### b. Daas is not entitled to summary judgment on Plaintiffs' private nuisance claim.

#### 1. *Actions for private nuisance in this jurisdiction*

 Title 28, Section 331 of the Virgin Islands Code creates a private right of action against one who causes damages to another by private nuisance, but the statute does not define what constitutes a private nuisance.[80] Prior opinions from courts in the Virgin Islands have defined a private nuisance is an intentional and unreasonable invasion of another's interest in the private use and enjoyment of land that causes significant harm, not just slight inconvenience or petty annoyance.[81] Applying this standard, courts in this jurisdiction have found that the noise caused by nineteen roosters[82] and the humming sound created by an electrical switch[83] may constitute a private nuisance, but that a failure to endorse a check did not.[84] However, in each of these cases, the court derived its definition of private nuisance from the Restatement, Second, of Torts, as mandated by 1 V.I.C. § 4,[85] which no longer represents the law of this jurisdiction.[86] There is no binding authority in this jurisdiction that defines a private nuisance; recognition of these earlier decisions

---

[80] *See* 28 V.I.C. § 331 (providing that "[a]ny person whose·property is affected by a private nuisance, or whose personal enjoyment thereof is in like manner thereby affected, may maintain an action for damages therefor").

[81] *Bermudez v. Virgin Islands Telephone Corp.*, 54 V.I. 174, 193 (V.I. Super. Ct. 2011); *Boyd v. Latalladi*, 8 V.I. 173, 177-78 (V.I. Mun. Ct. 1971).

[82] *Boyd*, 8 V.I. at 176.

[83] *Bermudez*, 54 V.I. at 193-94.

[84] *Mahogany Run Condo. Association v. Icg Realty Management Corp.*, 40 V.I. 404, 408 (D.V.I. 1999).

[85] *Mahogany Run Condominium Association*, 40 V.I. at 408; *Bermudez*, 54 V.I. at 193; *Boyd*, 8 V.I. at 177-78.

[86] *See Banks v. International Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011) (explaining that 4 V.I.C. § 21 supersedes 1 V.I.C. § 4). *See also Malloy v. Reyes*, 61 V.I. 163, 176 (V.I. 2014) (explaining that, "when the Superior Court confronts an issue of common law that [the Supreme Court of the Virgin Islands] has yet to address — or has only addressed through erroneous reliance on former 1 V.I.C. § 4 (repealed 2004) — it must conduct a three-factor *Banks* analysis").

applying 28 V.I.C. § 331 is only the first step in defining a private nuisance for purposes of ruling on Daas' Motion.[87]

The Virgin Islands' private nuisance statute was patterned after a similar statutory provision enacted in Alaska.[88] Interpreting its own private nuisance statute, Alaska defines a private nuisance as "a substantial and unreasonable interference with the use and enjoyment of real property . . . ."[89] Alaska's definition of private nuisance is in accord with nearly every other jurisdiction in the United States and its territories,[90] which jurisdictions allow a plaintiff to maintain an action for private nuisance against a defendant who has committed a nontrespassory act that interferes with the plaintiffs use or enjoyment of property.[91]

---

[87] The Court must evaluate any position previously taken by courts in the Virgin Islands, the approach taken by a majority of other jurisdictions, and, most importantly, which rule of law represents the soundest approach for the Virgin Islands. *Government of the Virgin Islands v. Connor*, 60 V.I. 597, 600 (V.I. 2014).

[88] *See Bermudez*, 54 V.I. at 187-93 (summarizing the history of the Virgin Islands' private nuisance statute and the judicial opinions from Alaska that interpreted the statute on which the Virgin Islands' private nuisance statute is patterned).

[89] *Parks Hiway Enterprises v. CEM Leasing Inc.*, 995 P.2d 657, 666 (Alaska 2000) (quoting ALASKA STAT. § 09.45.255) (internal quotation marks omitted).

[90] Excluding Alaska, the Court reviewed 54 jurisdictions to determine how to define a private nuisance.

[91] *See, e.g., Arkansas Release Guidance Foundation v. Needler*, 477 S.W.2d 821, 822 (Ark. 1972) (defining a nuisance as a nontrespassory interference with the use and enjoyment of another's land); *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893, 55 Cal. Rptr. 2d 724, 920 P.2d 669, 696 (1996) (same); *Public Service Corp. v. Van Wyk*, 27 P.3d 377, 396 (Colo. 2001) (same); *Pestey v. Cushman*, 259 Conn. 345, 788 A.2d 496, 502 (2002) (citations omitted) (same); *Gordon v. AMTRAK*, Civil Action No. 10753, 1997 Del. Ch. LEXIS 52, at *38 n.81 (Del. Ch. Mar. 19, 1997) (citing RESTATEMENT (SECOND) OF TORTS § 822 (1979)) (same); *Ortberg v. Goldman Sachs Group*, 64 A.3d 158, 165 (D.C. 2013) (same); *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 680 N.E.2d 265, 277, 223 Ill. Dec. 532 (1997) (same); *Ryan v. Emmetsburg*, 232 Iowa 600, 4 N.W.2d 435, 439 (1942) (same); *Williams v. Amoco Production Co.*, 241 Kan. 102, 734 P.2d 1113, 1124-25 (1987) (same); *Rockwell International Corp. v. Wilhite*, 143 S.W.3d 604, 625 (Ky. Ct. App. 2003) (same); *Johnston v. Maine Energy Recovery Co., L.P.*, 2010 ME 52, ¶ 15, 997 A.2d 741, 745 (same); *Blue Ink v. Two Farms, Inc.*, 218 Md. App. 77, 96 A.3d 810, 812-13 (Md. Ct. Spec. App. 2014) (same); *Morrissey v. New England Deaconess Ass'n*, 458 Mass. 580, 940 N.E.2d 391, 399 (2010) (same); *Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 487 N.W.2d 715, 720 (1992) (same); *Comet Delta, Inc. v. Pate Stevedore Co.*, 521 So. 2d 857, 859-60 (Miss. 1988) (same); *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 886 (Mo. 1985) (same); *Hall v. Phillips*, 231 Neb. 269, 436 N.W.2d 139, 145 (1989) (same); *Edwards v. Emperor's Garden Restaurant*, 122 Nev. 317, 130 P.3d 1280, 1288 (2006) (same); *Robie v. Lillis*, 299 A.2d 155, 158 (N.H. 1972) (citations omitted) (same); *Sans v. Ramsey Golf &*

■■■■■■

Interference must be both substantial and unreasonable before a cause of action for private nuisance will lie,[92] and the action giving rise to the claim may be intentional, negligent, reckless, or ultrahazardous.[93]

*Country Club, Inc.*, 29 N.J. 438, 149 A.2d 599, 605 (1959) (same); *Scott v. Jordan*, 1983-NMCA-022, ¶ 12, 661 P.2d 59, 62 (same); *Copart Industries, Inc. v. Consolidated Edison Co.*, 41 N.Y.2d 564, 362 N.E.2d 968, 971, 394 N.Y.S.2d 169 (1977) (same); *Morgan v. High Penn Oil Co.*, 238 N.C. 185, 77 S.E.2d 682, 689 (1953) (same); *Atalig v. Mobil Oil Mariana Islands, Inc.*, 2013 MP 11, ¶ 42 (N. Mar. I. Oct. 2, 2013) (same); *Brown v. County Commissioners of Scioto County*, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993) (same); *Seismograph Services Corp. v. Buchanan*, 316 P.2d 185, 187 (Okla. 1957) (same); *Smejkal v. Empire Lite-Rock, Inc.*, 274 Ore. 571, 547 P.2d 1363, 1364 (1976) (same); *Waschak v. Moffat*, 379 Pa. 441, 109 A.2d 310, 310 (1954) (same); *Charette v. Pezza*, C.A. No. 09-908, 2010 R.I. Super LEXIS 126, at *24-35 (R.I. Super. Ct. Aug. 12, 2010) (same); *O'Cain v. O'Cain*, 473 S.E.2d 460, 466 (S.C. Ct. App. 1996) (same); *Kuper v. Lincoln-Union Electric Co.*, 1996 SD 145, ¶ 49, 557 N.W.2d 748, 761 (same); *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 365 (Tenn. 2002) (same); *Bowers v. Westvaco Corp.*, 244 Va. 139, 419 S.E.2d 661, 667, 8 Va. Law Rep. 3316 (1992) (same); *Prah v. Maretti*, 108 Wis. 2d 223, 321 N.W.2d 182, 187 (1982) (same). *But see Freddy Nobriga Enterprises v. State*, No. 28149, 2008 Haw. App. LEXIS 64, at *12-13 (Haw. Ct. App. Feb. 8, 2008) (citing *Littleton v. State*, 66 Haw. 55, 656 P.2d 1336, 1344 (1982) (internal quotations omitted) (defining a private nuisance as that "works hurt, inconvenience, or damage, anything which annoys or disturbs one in the free use, possession, or enjoyment of his property or which renders its ordinary use or physical occupation uncomfortable, and anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights"); *Thrasher v. Atlanta*, 178 Ga. 514, 173 S.E. 817, 820 (1934) (observing that a private nuisance may "injure either the person or property, or both"); *Guerrero v. DLB Construction Co.*, 1999 Guam 9, ¶ 15 (noting that a cause of action for private nuisance may lie for conduct that is "injurious to health," among other things).

[92] *Armory Park Neighborhood Ass'n v. Episcopal Community Services*, 148 Ariz. 1, 712 P.2d 914, 920 (1985); *Needler*, 477 S.W.2d at 822; *Van Wyk*, 27 P.3d at 396; *Pestey*, 778 A.2d at 506; *Beckman v. Marshall*, 85 So. 2d 552, 555 (Fla. 1956); *In re Chicago Flood Litigation*, 680 N.E.2d at 277; *Ryan*, 4 N.W.2d at 439; *Williams*, 734 P.2d at 1124; *Wilhite*, 143 P.W.3d at 625; *Johnston*, 2010 ME 52, ¶ 15, 997 A.2d at 745; *Blue Ink*, 96 A.3d at 812-13; *Morrissey*, 940 N.E.2d at 399; *Adkins*, 487 N.W.2d at 720; *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 14-15 (Miss. 2007); *Frank*, 687 S.W.2d at 886; *Skyline Woods Homeowners Ass'n v. Broekemeier*, 276 Neb. 792, 758 N.W.2d 376, 394 (2008); *Edwards*, 130 P.3d at 1288; *Robie*, 299 A.2d at 158; *Sans*, 149 A.2d at 605; *Scott*, 1983-NMCA-022, ¶ 12, 661 P.2d at 62; *Copart Industries, Inc.*, 362 N.E.2d at 972; *Morgan*, 77 S.E.2d at 689; *Atalig*, 2013 MP 11, ¶ 42; *Buchanan*, 316 P.2d at 187; *Smejkal*, 547 P.2d at 1364-65; *Waschak*, 109 A.2d at 314; *O'Cain*, 473 S.E.2d at 466; *Greer v. Lennox*, 79 SD 28, ¶ 32-33, 107 N.W.2d 337, 339 (1961); *Stevensen v. Goodson*, 924 P.2d 339, 348 (Utah 1996); *Grundy v. Thurston County*, 155 Wn.2d 1, 117 P.3d 1089, 1092 (2005); *Hendricks v. Stalnaker*, 181 W. Va. 31, 380 S.E.2d 198, 200-01 (1989).

[93] *Van Wyk*, 27 P.3d at 396; *Pestey*, 778 A.2d at 506; *Gordon*, 1997 Del. Ch. LEXIS 52, at *38 n.81; *Ortberg*, 64 A.3d at 165; *Adkins*, 487 N.W.2d at 720, *Biglane*, 949 So. 2d at 14; *Frank*, 687 S.W.2d at 886; *Hall*, 436 N.W.2d at 145; *Scott*, 1983-NMCA-022, ¶ 12, 661 P.2d at 62;

■ In accord with a clear majority of other jurisdictions and the approach previously utilized by other courts in the Virgin Islands, the soundest rule for the Virgin Islands is to define a private nuisance as a substantial and unreasonable nontrespassory interference with another's interest in the private use and enjoyment of land. The requirement that an interference be nontrespassory distinguishes actions for private nuisance from actions for trespass. This distinction is necessary to put defendants on notice of the reason for which they are being sued.[94] The requirement that an interference be substantial prohibits recovery for interference that causes only "slight inconvenience or petty annoyance,"[95] thus promoting efficiency by conserving judicial resources. The requirement that a defendant's conduct be unreasonable guarantees that "the gravity of the harm outweighs the social utility of the defendant's conduct."[96] These criteria ensure that courts in the Virgin Islands, like the courts of other jurisdictions, will be able to efficiently allocate the burdens imposed by competing property uses and ultimately facilitate the optimal utilization of property in the Virgin Islands.

---

*Copart Industries, Inc.*, 362 N.E.2d at 972-73; *Buchanan*, 316 P.2d at 187; *Waschak*, 109 A.2d at 314; *Kuper*, 1996 SD 145, 49, 557 N.W.2d at 761.

[94] *Cf. Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 544 n.10 (V.I. 2015) (citing *Joseph v. Bureau of Corrections*, 54 V.I. 644, 650 (V.I. 2011)) (suggesting that the Virgin Islands is a notice pleading jurisdiction).

[95] *Cunningham v. Quintanilla*, No. 12-02-00041-CV, 2004 Tex. App. LEXIS 1077, at *14 (Tex. App. Feb. 4, 2004) (citing RESTATEMENT (SECOND) OF TORTS § 821F cmt. c (1965)). *Accord Edwards*, 130 P.3d at 1287-88 (observing that the requirement of substantiality comports with the common law doctrine of *"de minimis non curiat lex* (the law does not concern itself with trifles)").

[96] *San Diego Gas & Electric Co.*, 920 P.2d at 697. *Accord Pestey*, 778 A.2d at 505-06; *Artesian Water Co. v. Government of New Castle City*, Civil Action No. 5106, 1983 Del. Ch. LEXIS 496, at *42-44 (Del. Ch. Aug. 4, 1983); *Williams*, 734 P.2d 1125-27; *Sans*, 149 A.2d at 605; *Pezza*, 329 A.2d at 810. *See also Peters v. ContiGroup*, 292 S.W.3d 380, 391 (Mo. Ct. App. 2009) (considering the offensiveness and frequency of the intrusion as relevant factors in determining whether a private nuisance exists); *Hendricks*, 380 S.E.2d at 201-02 (explaining that "[t]he unreasonableness of an intentional interference must be determined by a balancing of the landowners' interests" and that "[a]n interference is unreasonable when the gravity of the harm outweighs the social value of the activity alleged to cause the harm").

*2. Plaintiffs have introduced evidence from which a reasonable jury could find in Plaintiffs' favor on Plaintiffs' private nuisance claim.*

 Plaintiffs have provided more than a scintilla of evidence that the vibrations created by Daas' construction activity constituted a substantial and unreasonable nontrespassory interference with Rosario's use and enjoyment of the Trust Property. Daas argues that Plaintiffs have not produced evidence of proximately caused monetary damages, and that Plaintiffs have not provided evidence that Daas' construction work caused significant harm to Plaintiffs' interest in the Trust Property.[97] Plaintiffs claim that Daas' construction caused Rosario to vacate the building and resume his boxers' training off island, thereby causing the Trust to lose rent.[98] Plaintiffs' claim for lost rent is supported by an affidavit of Rosario from December 2012, attached as an exhibit to Plaintiffs' Opposition. This claim is also supported by Rodriguez' report, which discusses the potential impact of vibration on the Boxing Building. Daas denies Plaintiffs' allegations.[99] A reasonable jury could conclude that the vibrations accompanying Daas' construction were so disruptive to Rosario's business that the vibrations amounted to a substantial and unreasonable nontrespassory interference with Rosario's interest in the Trust Property and the Boxing Building. This represents a genuine question of material fact for the trier of fact to resolve.

*3. If Plaintiffs prevail on their private nuisance claim at trial, the only compensatory damages for which Plaintiffs may recover are their alleged damages for lost rent.*

In their Opposition, Plaintiffs argue that summary judgment on their private nuisance claim is inappropriate because Daas allegedly damaged Plaintiffs by excavating on the Trust Property during construction. Specifically, Plaintiffs argue that the "cutting away of the Plaintiffs' road, removing the passageway for stormwater, obstructing the waterway with a concrete retaining wall, and excavating within 5 to 8 feet of the Plaintiffs' building . . . is substantially more than a slight inconvenience

---

[97] Def.'s Mot. for Summ. J. 8.

[98] Pls.' Opp. to Def.'s Mot. for Summ. J. 4-5.

[99] Def.'s Mot. for Summ. J. 2, 5.

or petty annoyance."[100] The parties do not dispute that excavation occurred within five to eight feet of the Boxing Building. However, Daas denies that it cut on the Trust Property, removed a passageway for stormwater, or obstructed that waterway with a concrete retaining wall. As discussed in the section pertaining to Plaintiffs' negligence claim, Plaintiffs have not introduced evidence to show that Daas cut on the Trust Property or that the cut diverted the flow of stormwater. Since Plaintiffs have offered no evidence, there is no genuine dispute of material fact concerning whether Daas cut on the Trust Property: no reasonable jury could find that such a cut occurred. The Court will treat as established the fact that no cut occurred on the Trust Property.

As also discussed in the section pertaining to Plaintiffs' negligence claim, Plaintiffs have not provided any evidence that they have sustained damages for the training of boxers, for impact to their business interests, or for diminution of the Trust Property's value. Since Plaintiffs have failed to carry their burden to substantiate the existence of those damages, the Court will also treat as established the fact that Plaintiffs have not suffered those alleged damages. Consequently, if Plaintiffs prevail on their private nuisance claim at trial, they will not be entitled to compensatory damages for those alleged losses.[101]

Plaintiffs have argued that the case of *Myers v. Derr*[102] supports their position that they entitled to damages as a result of Daas' conduct. In *Myers*, the Supreme Court of the Virgin Islands applied the provisions of the Restatement (Second) of Torts Sections 929 and 931, and determined that a plaintiff alleging trespass was entitled to damages for the loss of use of his land, the diminution of his land's value, and for discomfort and annoyance.[103] Yet the reasoning in *Myers* represents the mechanistic

---

[100] Pls.' Opp. to Def.'s Mot. for Summ. J. 10.

[101] It is possible that Plaintiffs may be entitled to nominal damages, even if they ultimately cannot sustain their burden of proof on their claim for compensatory damages at trial. Nominal damages "constitute a small or trivial amount of money awarded to a litigant who has established a cause of action, but has not proven that he is entitled to compensatory damages." *Creque v. Cintron*, 17 V.I. 69, 74 (Terr. Ct. 1980). Because Plaintiffs have introduced evidence from which a reasonable trier of fact could determine that Plaintiffs are entitled to compensatory damages for lost rent, The Court need not address whether the potential award of nominal damages precludes summary judgment on a private nuisance claim.

[102] 50 V.I. 282 (V.I. 2008).

[103] *Id.* at 292-93.

application of the Restatements of the Law prohibited by *Banks v. International Rental & Leasing Corp.* and thus does not bind this Court.[104] Furthermore, *Myers'* application of Sections 929 and 931 pertains to an action for trespass. Because Daas has not moved for summary judgment on Plaintiffs' trespass claim,[105] the appropriate measure of damages for trespass is irrelevant for purposes of ruling on Daas' Motion.

## CONCLUSION

The existence of damages is an element in each of Plaintiffs' first three causes of action. Plaintiffs have not produced any evidence of damages to sustain a claim for the loss of lateral support, and only some evidence of damages to support their negligence and nuisance claims. Daas is entitled to summary judgment on Plaintiffs' loss of lateral support claim because Plaintiffs have not produced any evidence of subsidence, and consequently, cannot produce evidence from which monetary damages for the alleged loss of lateral support could be calculated. To the extent that it exists, Plaintiffs' public nuisance claim fails as a matter of law due to their failure to introduce evidence that Daas unreasonably interfered with a right common to the public. Plaintiffs' negligence and private nuisance claims survive summary judgment, but only to the extent that Plaintiffs have provided evidence of damages for lost rent. Plaintiffs' remaining categories of damages are not supported by any evidence in the record, and cannot survive summary judgment because no reasonable jury could find in Plaintiffs' favor on those categories of damages. While Plaintiffs' negligence and private nuisance claims will survive summary judgment, Plaintiffs' attempt to recover compensatory damages for anything other than lost rent will not. An appropriate order shall follow.

---

[104] *See id.* at 292 (quoting 1 V.I.C. § 4 and applying provisions from the Restatement (Second) of Torts).

[105] *See* Def.'s Mem. of Law in Support of Def.'s Mot. for Summ. J. 6 (arguing that "monetary damages are not appropriate remedies for claims of . . . trespass"). Daas' Motion only addresses Counts One through Three of Plaintiffs' Second Amended Complaint, and thus does not purport to move for summary judgment on Counts Four, Five, or Six. *See id.* at 6-14 (arguing only that Daas is entitled to summary judgment on Plaintiffs' loss of lateral support claim, on Plaintiffs' negligence claim, and on Plaintiffs' public and private nuisance claim).